[No. 5177.]
[No. 2781 C. A.]

THE CITY OF DENVER ET AL. v. UTZLER.

1. **Cities and Towns—Duties—Obstructions in Streets—Liability for Injuries.**

It is the duty of a city to maintain its streets in a reasonably good condition for ordinary travel by persons using due care and prudence, and the city has no right to allow its citizens owning property to place obstructions upon portions of the street intended for a travelway; and when such an obstruction is the proximate cause of an injury, and the person injured could not have avoided the injury by the exercise of reasonable and ordinary care and prudence, the city is liable therefor. —P. 303.

2. **Cities and Towns—Highways—Use of Horses—Duty to Fasten.**

A person in charge of a horse on a public highway is bound to take care that it shall do no injury in consequence of being frightened, and he has no right to leave it unless it is securely fastened or is in charge of some competent person.—P. 310.

3. **Cities and Towns—Obstructions in Streets—Liability for Injuries to Horses.**

Where a horse takes fright and runs away and is injured because of the negligence of the municipal corporation in leaving a dangerous excavation in the street unprotected, an action may be maintained against the corporation; provided, of course, that the driver of the horse exercised due care and skill in driving and managing it.—P. 313.

4. **Cities and Towns—Obstructions in Streets—Liability for Injuries—Negligence of Traveler.**

A defect in a public street within a city or town does not render a corporation liable for an injury occasioned by a team coming in contact with it, unless the defect is the proximate cause of the injury, and this cannot be said to be true where the carelessness or negligence of the driver permits those causes to be set in motion which produce the damage.—P. 315.

5. **Same—Practice in Civil Actions—Nonsuit—Directed Verdict.**

Plaintiff, after removing a load of coal from his wagon, left his horse standing in an alley with the lines fastened to the wagon seat so that he could not reach them without getting into the wagon, and without tying or otherwise fastening the animal. While plaintiff was behind the wagon cleaning up the coal, the horse started, and plaintiff jumped into the wagon and secured the lines after the horse had reached the street, but subsequently dropped them, and, before getting the horse under control, the wagon ran against an obstruction in the street, and plaintiff was thrown out and injured. Held, that, owing to plaintiff's negligence in leaving the horse untied, he was not entitled to recover; and a judgment of nonsuit, upon request, should have been rendered, and, failing in that, the court should have directed verdict.—P. 315.

*Appeal from the District Court of Arapahoe County. Hon. B. M. Malone, Judge.*

Action by John D. Utzler against the City of Denver and Harriet A. Myers. From a judgment for plaintiff, defendants appeal.      *Reversed.*

Mr. H. M. ORAHOOD, city attorney, and Messrs. BENEDICT & PHELPS, for appellants.

Mr. JOHN A. RUSH, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

It appears that, at the time of the accident, the width allowed for the sidewalk upon 12th Avenue, in the City of Denver, was 16 feet. At the place of the accident, however, the curbing was not placed 16 feet from the edge of the street, but at a distance of something less than that. Between the curbing and the driveway in front of Mrs. Myers' premises, was a gutter made of cobble stones. A flagstone was placed across this gutter, and, upon that, a stepping stone, used for convenience in entering carriages, and the like. There was also a hitching post outside the gutter and near the stepping stone. The stepping stone and flagging across the gutter extended something like four feet beyond the curbing, but still was within the 16 feet allowed by ordinance for sidewalks, as was the hitching post. The defendant, Myers', property was located upon 12th Avenue near Ogden Street.

It appears that the plaintiff was engaged in the business of hauling coal, using one horse for that purpose. On the 30th day of August, 1897, he was delivering coal at the residence of Mrs. Bonesteel, at No. 1112 Ogden Street. To deliver this coal, he drove into the alley between Ogden Street and the next street east, going from 11th Avenue toward 12th. After removing the coal, he stepped up the horse, and got out of the wagon to clean up such of the coal as he had not succeeded in throwing into the lot. He left the horse standing without tying, fastening or securing it in any manner, leaving the lines attached to the seat on the wagon, so that he could not reach them without getting into the wagon. While he was on the ground behind the wagon, cleaning up the coal, the horse began to move away. Plaintiff ran and jumped into the rear end of the wagon. By the

time he got there, the horse had turned from the alley to 11th Avenue, going toward Broadway, which would be west. It ran down the alley and along 11th Avenue to Ogden Street. At this point there are car tracks. It seems that the driver had gotten into the seat and secured the lines, but, in crossing the tracks, he again lost them. He got down and reached the lines. By this time the horse had come to 12th Avenue, turned there, and, shortly after turning, ran against the stepping stone in front of the Myers premises. The driver was thrown out, and struck his knee on the cobble stones in the gutter. It appears that he held to the lines, the horse dragging him, until he struck the hitching post with his side, knocking off some of the skin.

On the 13th of June of the next year, plaintiff brought this action against Mrs. Myers and the city. Judgment was rendered against defendants for $500, on the 3rd day of June, 1902.

At the close of plaintiff's testimony, defendants moved for judgment as of nonsuit. This motion was overruled. At the close of all of the testimony, defendants requested the court to instruct the jury to return a verdict for defendants. This request was denied. Error is assigned because of the court's action in that respect. There are many other errors assigned in the record which we do not deem necessary to consider.

The horse has been a fruitful source of profit to lawyers, and of laborious study and anxiety to courts.

It is the duty of a city to maintain its streets and highways in a reasonably good condition for ordinary travel by persons using due care and prudence in the use of the same. Citizens owning property bordering upon the street have not the right to place obstructions upon such portions of the street as are intended to be used as a travelway, and the city

has no right to suffer this to be done. Where it is permitted, and one lawfully upon the street and using due care, is injured because of such obstruction and without fault upon his part, the city is liable. The city is not liable, however, except in cases where an obstruction is the proximate cause of the injury, and it is not liable if the party injured could have avoided the injury by the exercise of reasonable and ordinary care and prudence. It is the difficulty of determining what was the proximate cause of the injury and as to what is due care that has filled the reports of the various courts in this country with much legal lore on the question of the runaway horse coming in contact with the defective street.

At one time it seemed to be a question whether he who incumbers the highway unlawfully should not be made answerable for any direct damage which happened to any one who was injured thereby, whether the person thus injured was in the use of proper care or not; but this matter was finally set at rest in England in the case of *Butterfield v. Forrester*, 11 East. 59, determined nearly one hundred years ago, wherein it is said:

"Two things must concur to support this action: An obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it."

It is said, in the case of *Palmer v. Inhab. of Andover*, 2 Cush. 605, that the doctrine announced in *Butterfield v. Forrester* has never been questioned.

In this state there are three cases bearing somewhat upon the question involved here: *Denver v. Johnson*, 8 Colo. App. 384; *Thunborg v. City of Pueblo*, 18 Colo. App. 80; *Highline Canal Co. v. Westlake*, 23 Colo. 26.

In the Johnson case, it appears that the city maintained, or permitted to be maintained, a ditch 13 feet wide upon one side of the street. Between the

ditch and the street-car track was a driveway 9 feet wide. The steps of the street cars projected 18 inches from the track, leaving $7\frac{1}{2}$ feet from the steps to the ditch. A car came upon the driver of a wagon unnoticed until it was very near. The team shied, and, either from the shying, or from the striking of the rear end of the wagon by the car, the horses fell into the ditch. The court of appeals, in passing upon this matter, said: "The horse becoming frightened and participating in the injury in no way modifies the liability. There are numerous cases where the municipality has been held liable for injuries to the horse by reason of defects in the street when the horse had become frightened and unmanageable."

*Higgins v. Boston,* 148 Mass. 486, and *Spaulding v. Inhab. of Winslow,* 74 Me. 528, are cited in support of this proposition. The Massachusetts case does not support the doctrine laid down by the court of appeals. It appears in this case that a horse, while being driven along a private way towards a city street 66 feet wide, from which it led at right angles, became uncontrollable at a distance of about 100 feet from such street. When the street was reached, the driver had not regained control sufficiently to enable him to safely turn and drive along it, and he drove directly across it and down a bank on the other side which was unprotected by a railing upon the adjoining land, and the person with him was injured. Held, that the want of a railing, even if it would have been useful, is not the sole cause of the injury, and that the city was not responsible therefor. The uncontrollable condition of the horse contributed directly to it, and that condition arose outside of the limits of the highway.

The Maine case is in point, and supports the doctrine of the court of appeals case, because the horses merely shied, and the driver only lost control of them

momentarily, and this seems to have been the fact in the Johnson case. The cause of the accident in the last named case was so different from the cause of the accident in this case, as to render it of but little value as an authority. The application of entirely different legal principles is involved.

In the case of *Thunborg v. City of Pueblo, supra,* it appears that the fire plug against which the cart collided was concealed by weeds so that it could not be observed by one using ordinary care. There was some proof in that case that the horse was running away and the driver was unable to control him completely. The runaway, however, was without any fault on the part of the driver. Under these facts, the court of appeals said that, if the horse was going excessively fast, it was quite immaterial whether the plaintiff was able to restrain him or not, for, unless the plaintiff himself be responsible for the immoderate speed, it constitutes no defense to the city.

In the present case, if the driver had taken the precaution of fastening his horse or of having the lines in such a position that he could readily secure possession of them, the horse would not have escaped and the accident would not have occurred, and it seems that these are precautions which should occur to a man of ordinary prudence.

The *Highline Canal Co. v. Westlake, supra,* was an action instituted by the widow to recover for the death of her husband, the death having been occasioned by a horse attached to a carriage driven by deceased, running away and overturning the carriage into the canal of defendant. This court said:

"The roadway was reasonably safe for the passage of ordinary teams. In the frenzied condition of the horse that was being driven by the deceased, it is doubtful if any reasonable precaution that the public officers or the defendant company could have taken

would have insured safety. The injury sued for was primarily caused by the fright of the horse, and that fright was not caused by any defect in the roadway or in the construction or operation of defendant's ditch.''

The duty of cities in relation to the maintenance of streets is stated as follows by Mr. Dillon:

''The corporate authorities are only bound to use reasonable skill and diligence in making the streets and sidewalks safe and convenient for travel. They are under no obligation to provide for everything that may happen upon them, but only for such things as ordinarily exist or such as may reasonably be expected to occur. They are not bound to keep the streets in such condition that a traveler thereon may, with safety, run his horses at a furious rate of speed or drive thereon unmanageable horses, nor are they bound to keep the streets in such condition that damage may not be caused thereon by horses which have escaped from the control of their driver and are running away.''—2 Dillon on Munic. Corp., § 1015.

There are two lines of decisions in this country relating to accidents occasioned by runaway horses coming in contact with defective streets, one supporting the text announced by Dillon and the doctrine as laid down by this court in the *Highline Canal Co. v. Westlake, supra,* the others announcing a doctrine somewhat at variance with these cases, but, as we view the matter, the plaintiff is not entitled to recover under either doctrine.

*Moulton v. Inhab. of Sanford,* 51 Me. 127, was a case wherein the plaintiff was crossing a bridge over a narrow stream in the town of Sanford. The horse became frightened, and ran so near the edge that the body of the wagon was detached from the forward wheels and thrown into the stream. The court de-

termined that the frightened horse was the primary cause of the accident, saying:

"When a horse becomes unmanageable, unless his condition is caused by a defect in the highway, such defect is not the primary cause of an accident to which it contributes. A witness, on being asked to state the cause of such an accident, would give that which caused the condition of the horse. So long as the primary cause continues in operation, it may occasion the damage; and, if it happened upon a defective road, it is by no means thereby rendered certain that it would not otherwise have occurred upon one not defective, for it is clearly true  *  *  *  that no proof can establish the fact that the damage would not have been sustained but for the defect, so long as it appears that some other cause contributed to the result."

In *Jackson v. Town of Bellevieu,* 30 Wis. 251, it appeared that one of the highways of the town of Bellevieu was out of repair, numerous gulleys and dangerous holes having been washed out and left unprotected. Plaintiff's horse having become frightened by some cause other than the defects in the highway, ran away, fell into one of these holes, and was killed. Plaintiff recovered judgment against the town. Dixon, C. J., in a remarkably clear opinion, says:

"The escape and flight of the horse in this case was in no way connected with or attributable to any defect or insufficiency in the highway, and, conceding the same to have been defective at the point of injury, still the town is not liable, because the owner or driver was in no situation to exercise ordinary care or prudence to prevent the injury at the time it happened, which proof is in all cases necessary in order to charge the town, unless the situation or disability of the driver in this respect is caused by the same or

some other defect in the highway.   *   *   *   It is not the duty of towns to provide roads which shall be safe for runaway or unmanageable horses, or such as have escaped from control of their drivers without the fault of the towns, and, where injuries are sustained under such circumstances, it appearing that otherwise they might not have been sustained, the loss must fall upon the owners whose misfortune, if not whose fault, it is that they so happened.''

*Fogg v. Town of Nahant,* and *May v. Same,* 98 Mass. 578, is a case wherein the horse threw his tail over the line and, for a considerable distance, was consequently not under control. The driver could not prevent coming upon a defect in the highway. He could have prevented this had he regained control of the horse, and the court held:

''The liability of the town for an injury to a traveler, occasioned by a defect or want of repair in a highway, depends upon proof that the defect caused the injury. If a want of due care on the part of the person injured contribute to cause the injury, he cannot recover. And if, without fault or negligence on his part, his horses have escaped from his control, and have run away or become wholly unmanageable, so that no care can be exercised by him in respect to them, and this condition of things is not produced by a defect in the way, the town is not responsible for what may happen in consequence, even if the carriage upsets at a place where the way is defective.''

This case went back for retrial and was again brought to the attention of the Massachusetts Supreme Court in 106 Mass. 278, and it appears that, at the second trial, the trial judge directed a verdict for the defendant, which was approved by the supreme court.

In *Davis v. Inhab. of Dudley,* 4 Allen 557, it appeared that the plaintiff was riding in a sleigh, that he was using due care, that, in consequence of a secret defect, the bolt connecting the cross-bar and thills with the sleigh broke, let them fall upon the heels of the horse; the horse ran away, and struck a pile of wood lying within the street, and broke his leg. It was said by the court that:

"It is now perfectly well settled that, to maintain an action of this kind, it is incumbent upon the plaintiff to prove that he sustained an injury in his person or property by means of a defect in the highway while he was himself using due care."

While there was no question about the defect in the road, the judgment for the plaintiff was reversed, for the sole reason that the plaintiff had lost control of the horse, and was therefore unable to exercise due care.

In *Titus v. Inhab. of Northbridge,* 97 Mass. 258, it is said: "When a horse, by reason of fright, disease or viciousness, becomes actually uncontrollable, so that his driver cannot stop him, or direct his course, or regain control over his movements, and in this condition comes upon a defect in the highway * * * by which an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable."

Before considering the cases relied upon by appellee, it will, perhaps, be well to call attention to the duty of the plaintiff in the management of his horse. The rule is well settled that a person has no right to leave his horse in a public highway unless it is securely fastened or is in charge of some one competent to take care of it. He is bound to take care that the horse shall do no injury in consequence of being frightened by anything that may occur.—*Bige-*

*low v. Reed,* 51 Me. 338; *Norris v. Kohler,* 41 N. Y. C. A. 42; *Doherty v. Sweetser,* 82 Hun. 556.

In the case last cited, it is said: "It has become almost proverbial that no horse is safe to leave untied on the street."

Some of the cases relied upon by appellee are the following, which, if rightly considered, bar the plaintiff from recovering because he failed to exercise ordinary care and prudence.

*Hunt v. Town of Pownal,* 9 Vt. 411, appears to be the leading case upon which the authorities cited by appellee are based. The facts of that case were, that the highway was about 11 feet wide; it ran along the base of a mountain on one side, and had a rapid stream on the other. While traveling in a wagon and using due care, the nut, which had been secured on the inner end of the bolt connecting the left arm of the tongue to the forward axletree, came off. The wheels thereupon turned out at right angles with the road, toward the river, and the wagon, with all its contents, was precipitated down the bank.

Under these facts, the court held:

"If the road be out of repair, and the injury happened by reason of such want of repair, and the plaintiff or his agents are guilty of no want of care or prudence, the defendants are liable.   *   *   *   If there be no fault on the part of the plaintiff, which common sagacity and forecast could have anticipated and provided against, and the loss be the combined result of accident and the insufficiency of the road, the plaintiff may recover."

In Connecticut, the rule seems to be as follows:

"If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendants, combined with some accidental cause, to which the plaintiff has not negligently contributed, the defendants are liable. Nor

will the fact that the horse of the plaintiff was uncontrollable for some distance before the injury, change or in any way affect the liability of the defendants.''—*Baldwin v. Greenwood's Turnpike Co.,* 40 Conn. 244.

In *Winship v. Enfield,* 42 N. H. 197, it appeared that the horse became frightened by some parties throwing some wood from an adjoining lot over the fence into the highway. The horse ran away and, in passing over a water-bar which was laid across the road near by, the plaintiff's wagon was overturned and she was thrown out and injured. She recovered judgment against the town. While the judgment was reversed, it was held that, where the plaintiff is in no fault and the injury was the combined result of accident and the defendant's neglect to repair the road, the town must be held liable, even though the vices of the horse or defects in the wagon may have contributed to the injury, if there was also fault on the part of the town that contributed to the same result; provided, always, that the plaintiff was without fault.

In an action to recover damages against the city for an injury to plaintiff's horse by reason of a defective bridge, the petition alleged that plaintiff was driving his horses and sleigh through the streets, and the horses, without fault of plaintiff, became frightened and ran away and, being unmanageable, ran toward the bridge, throwing plaintiff out of the sleigh. In crossing the bridge, one of the horses stepped through a hole, negligently permitted therein by defendant, whereby the horse's leg was broken. Due care and diligence on the part of the plaintiff in driving his team were averred. Held, that the petition averred a cause of action; that a demurrer thereon on the ground that it showed that the horses were beyond the control of plaintiff and that he was not exercising due care at the time of the injury, was

improperly sustained.—*Manderschid v. City of Dubuque,* 25 Ia. 108.

In that case, the driver was exercising due care and skill at the time the horse became frightened, but, notwithstanding the exercise of such duties, the team became frightened and unmanageable, and passed beyond his control.

*Hull v. City of Kansas,* 54 Mo. 598, was a case where the horse threw his tail over the rein and commenced backing, and backed into a hole in the street, injuring the horse and buggy. It was held that the plaintiff was entitled to recover because the driver used due care and because he had only lost control of the horse temporarily, and that the accident would not have occurred except for the defect in the street.

In the case of *Spaulding v. Inhab. of Winslow,* 74 Me. 528, cited by plaintiff, the court says:

"If the horse became by fright unmanageable, substantially freeing himself from the control of the driver, and the upset ensued from such unmanageableness, the fright of the horse should be regarded as a proximate cause   *   *   *   of the accident.   *   *   *   If, however, the horse, while being properly driven, upon sight of the hole suddenly started or shied, and swerved or sheered a few feet from the direct line of travel, and, through only a momentary loss of control by the driver, threw the wagon into the ditch on account of the want of a railing, and the road was defective for want of a railing, in such case the misadventure of the horse should not be considered as causing the accident."

Where a horse takes fright and runs away and is injured because of the negligence of the municipal corporation in leaving a dangerous excavation in the street unprotected, an action may be maintained against the corporation; provided, of course, that the driver of the horse exercised due care and skill in

driving and managing it.—*Crawfordsville v. Smith,* 79 Ind. 308.

In *Ring v. Cohoes,* 77 N. Y. C. A., it is said:

"A municipal corporation, bound to keep its streets in repair, is only bound to the exercise of reasonable skill and diligence in keeping said streets safe and convenient for such use of them as is ordinarily, and as could reasonably be, expected. It is not bound to keep them in such a condition that damage may not be caused thereon by horses which have escaped from the control of their drivers, and are running away. Where, however, without any fault on the part of a driver, his horse becomes frightened and unmanageable, and this with a culpable defect in the highway produces an injury, the municipality is liable, provided the injury would not have been sustained but for such defect; the fact that the horse was at the time beyond the control of the driver is no defense."

*Hey v. Philadelphia,* 81 Pa. St. 44, is cited by plaintiff. In that case, the city was found liable for injuries to a horse which became frightened and fell with the carriage over a precipice into the river. It was determined, under the peculiar circumstances of the case, that the extreme danger at that place in the highway made it necessary to erect barriers to prevent just such accidents. The court, however, said:

"It is true that ordinarily, provision is not to be made against contingencies so rare as runaway horses. Roads and bridges are constructed for the purpose of ordinary travel, and if they fill such purpose, they are sufficient, and those who have them in care are not chargeable with the results of extraordinary accidents that may occur upon them."

These, of course, are not all of the cases cited by appellee, but they are sufficient to show the doctrine which he contends for. The difficulty in attempting

to make these authorities sustain appellee's position is that, in most, if not in all of them, the fright of the horse was occasioned by accident or something entirely beyond the control of the driver; while, in this case, plaintiff left his horse standing in the alley, not fastened or secured in any way, and with the lines in such a position that he could not reach them. The horse started to run away, and the accident was the result. Ordinary foresight and prudence should have suggested to the plaintiff that his horse was liable to run. He neglected the dictates of experience because, as he says, "the horse was gentle and kind, and not in the habit of running away," forgetting that it is the unloaded gun and the gentle horse that usually go off unexpectedly.

The effect of affirming this decision would be to make an accident insurance company of every city and town in the state. A driver would have *carte blanche* to leave his team standing, knowing that, if it ran away and injured itself by coming in contact with some defect in the street, the city would be made to pay for the damage.

A defect in a public street within a city or town does not render the corporation liable for an injury occasioned by a team coming in contact with it, unless the defect is the proximate cause of the injury, and this cannot be said to be true where the carelessness or negligence of the driver permits those causes to be set in motion which produce the damage. Under the facts in this case, the plaintiff was not entitled to recover. The judgment of nonsuit should have been rendered; failing in that, the court should have directed a verdict. Consequently, the judgment will be reversed.           *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.