[No. 6001.]

THUNBORG V. CITY OF PUEBLO.

1. **Municipal Corporations — Care of Streets —** The city is bound to reasonable care for the safe condition of its streets. If a traveler, while using due care, sustains an injury proximately attributable to the city's negligence in this respect, he is entitled to recover. Otherwise, if by due care the traveler might have avoided the injury.—(342)

2. **Contributory Negligence of Traveler —** A traveler who, having a general acquaintance with the street, unnecessarily turns out of the traveled way and collides with a hydrant which is in the proper place, and about which no negligence can be attributed to the city except that weeds have been permitted to grow up and hide it, has no action. A city is not negligent in placing a hydrant upon the same line with the trees which shade the street.—(339-342)

3. **Appeals—Error Without Injury—**To direct the jury upon a charge of negligence not set up in the complaint is not prejudicial to the plaintiff, nor is a charge which imposes upon the defendant a measure of care exceeding what the law requires.—(344)

4. **Instructions — Construed —** The charge that the city is under duty to keep its streets safe for ordinary travel imports

that this duty extends to the hours of the night, as well as the day.—(345)

5. Appeals—Briefs of Counsel—To merely say that an instruction is wrong is not such a specification of error as requires examination.—(345)

*Error to Pueblo District Court*—Hon. JOHN H. VOORHIES, Judge.

Mr. M. J. GALLIGAN, for plaintiff in error.

Mr. D. A. HIGHBERGER, and Mr. JOHN A. MARTIN, for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

On the evening of June 24, 1898, plaintiff in error was driving north on Court street in the city of Pueblo, and on the east side of Court, at or near its intersection with 22nd street, the vehicle in which he was riding came into violent collision with a fire hydrant, and he was thrown out, sustaining serious injuries. He commenced this action against the city to recover damages. The complaint alleged that the city was negligent in maintaining and allowing the hydrant to be in dangerous proximity to the traveled way, and in allowing weeds and brush to grow around and obscure it. The answer denied that the city was negligent, and alleges that the injury was caused by the negligence of plaintiff; that the plaintiff was negligent in driving at a rapid rate of speed, and in turning out of the traveled way without due care and caution, which negligence on the part of plaintiff caused the injuries complained of. The trial was before a jury, and the verdict and judgment were for the city. The case was tried before, with the same result. From the first judgment, the plaintiff appealed to the court of appeals, where the

judgment was reversed.—*Thunborg v. City of Pueblo,* 18 Colo. App. 80.

In the record now before us, the facts appear to be fuller, and somewhat different, in certain particulars, from those on the former appeal, owing, no doubt, to the effort of counsel to clearly show what was before obscure. And the instructions now conform to the views expressed by the court of appeals.

It appears from the evidence that the place where the hydrant was situated was in a sparsely settled part of the city, and while there was considerable travel along Court street, it was light as compared with the travel on streets in the business and thickly-settled sections. The evidence of plaintiff's witnesses showed that there was a way for travel—one said about thirty-five feet wide, another, sixty or seventy feet—between the brush or weeds on either side; that this way was in the condition that unpaved streets usually are, though opposite and to the west of the hydrant, they testified that, at times, there was a puddle of mud, and to avoid this, the beaten way turned toward the hydrant; and at this time, one witness testified that the hydrant was within fourteen inches; another, within four to six feet of the edge of the beaten way. The evidence for plaintiff shows that, at this time, there was but a narrow way, scarcely wide enough to permit two vehicles to pass, between the hydrant and the west side of the street, without getting into the mud and mire to the west of this traveled way. It was admitted that the fire hydrant was about two and one-half feet high, and that it was between the curb and lot line, at the usual and proper place for such a fixture. Mr. Warner, one of the plaintiff's witnesses, testified, without contradiction, that the hydrant was in line with the trees and poles along the street. This hydrant

was more or less obscured by sunflowers and sage-brush, which appear to have been growing to a greater or less extent on the vacant blocks and unused portions of the streets. It had been there for several years. Plaintiff testified he had never seen it, and did not know it was there. He also testified that he had driven past this hydrant, to and from his home, almost daily for about eighteen months prior to the accident. Others of plaintiff's witnesses testified that it could be seen, through the weeds, when one was on the way directly opposite to it, and that it was not so much hidden in the winter as in the summer. Under these circumstances, the jury may well have believed that the plaintiff knew of this hydrant. While no curb was constructed, or, if constructed, had been washed away, the evidence showed that the curb line was defined by a furrow, from which the street had been at one time graded.

Aside from the existence of the hydrant, it is clear that the plaintiff knew of the condition of the street, and the care that the city took of it. The plaintiff testified that he was driving north on Court street at an ordinary trot, and, when he approached the intersection of Court and 22nd streets, he saw another person in a buggy coming toward him. In order to permit the passage of the approaching vehicle between him and the mud, he turned his horse to the right into the weeds, his vehicle struck the hydrant, the horse broke from the wagon, and the plaintiff was thrown to the ground. He also testified that it was not dark, that he could plainly see the approaching vehicle, but did not look to ascertain whether the person approaching had turned out of the road. The person who was approaching the plaintiff testified for the defendant. He said he heard the noise of plaintiff's wagon, coming toward

him, and that he turned west, to the right, off the traveled way, so as to give the plaintiff the entire way.   At the time the plaintiff's vehicle struck the hydrant, the other vehicle was on the west side of the street, almost opposite the hydrant, and from fifteen to twenty feet west from the west side of the traveled way, or, as the beaten way was eight or nine feet wide, from twenty-three to twenty-eight feet west of the east side of the way.   In other words, the plaintiff had all the beaten way to himself.   This testimony is uncontradicted.   This witness also testified that, when the plaintiff was thrown out, the witness walked directly across the twenty-three to twenty-eight feet between them, and encountered no mud or mire, and, so far as he could see, the roadway was good, though he claimed it was too dark to see well.   This witness also stated that plaintiff was driving at a rapid rate, about twelve miles an hour, and when the vehicle struck the hydrant, the horse was freed from the wagon and never stopped.

Another witness testified that he was driving north on Court street, and heard a horse and vehicle coming behind him, making a great noise.   The witness drove his horse as fast as it would go to keep out of the way, but the horse behind gaining on him, the witness turned out at an unusual place.   The horse behind him continued on at the same speed, turned into the weeds, ran the vehicle against the hydrant, stopping it suddenly, and the horse, without stopping, freed itself from the wagon.

The testimony of these two witnesses, coupled with the fact that the horse, by the force of the collision, was at once freed from the vehicle and continued on with unslacked speed, is wholly at variance with the testimony of plaintiff that he was driving at an ordinary trot, unless he considers an

ordinary trot to be a rate of speed that is ordinarily considered a furious one.

Here, then, from the testimony of plaintiff himself, and the uncontradicted testimony of others, is presented a case wherein it appears that, aside from the presence of the hydrant, the plaintiff knew of the condition of the street where the accident occurred; that he could plainly see in front of him; that he had his horse under complete control; that he had the whole traveled way ahead of him for his own use, which he could have seen had he exercised a small degree of caution by looking; that, without any necessity therefor, he deliberately turned his horse out of the beaten way into the weeds, to that part of the street designed for poles and trees and water hydrants, and encountered this hydrant, concealed by the weeds and sage-brush. Under these circumstances, it is clear that the verdict is justified upon the ground that it was the want of due care and caution on the part of plaintiff himself, that caused his misadventure, regardless of whether the city was or was not negligent. And, if we add to this the facts that there was sufficient evidence upon which to base a belief that plaintiff was driving at a rapid rate of speed, and that he knew of the existence of the hydrant, the justification for the verdict becomes even stronger.

It is the duty of a city to maintain its streets in a reasonably safe condition for ordinary travel by persons using due care and prudence in the use of the same, and if the traveler uses due care and prudence and sustains injuries, caused proximately by the negligence of the city, it will be liable, but it will not be liable if the party injured could have avoided the injury by the exercise of reasonable and ordinary care and prudence.—*City of Denver v. Utzler,* 38 Colo. 300.

In a somewhat similar case, in which the plaintiff collided with a stone, placed by the town and which was within from four to twelve inches of the traveled way, and hidden by grass, the supreme court of Massachusetts said: "We understand these instructions, taken in connection with what precedes, to say in substance that, if the plaintiff, without any reasonable cause therefor, knowingly drove out of the way prepared for travel, * * * and in that way was injured by contact with the stone, she could not recover; and such we understand to be the law."—*Carey v. Hubbardston*, 172 Mass. 106.

The plaintiff says that error was committed in admitting testimony that plaintiff's horse was running away. The court told the jury, in one instruction, that if plaintiff's horse was running away, or beyond his control, that fact could not be considered as a want of due care on his part. There was some evidence that the horse might have been running away. As we have seen, plaintiff declared it was not, and we accept his statement as true. If the admission of this testimony was prejudicial to plaintiff, which we are unable to see, the instruction removed the prejudicial effect. We do not wish to be understood as holding that this instruction was sound law. Sound or unsound, it was not prejudicial to plaintiff. We refer to it simply to answer his assignment of error.

The plaintiff claims that the negligence of the city was clear, and that but one question, the amount of damages, should have been submitted. If such a course had been pursued, what would have become of the question of the contributory negligence of plaintiff? It is not clear that the city was negligent. The negligence of the city, the contributory negligence of the plaintiff, and the amount of damages,

were all submitted to the jury under proper instructions. This was the right way.

Complaint is made of instructions 2 and 4, given by the court. It is said that they are not based on the evidence, but it is not pointed out wherein they are not so based, and we are unable to see, without aid, that they do not conform to the evidence. It is further contended that these two instructions are inconsistent with each other, and also with number 3, which plaintiff says is correct. In instruction number 2, the court said that the city was not negligent in erecting the fire hydrant where it was. That is correct. The hydrant was lawfully in the street. In that instruction, the court further said that the only charge of negligence to be considered was the fact that the city permitted the hydrant to be obscured and hidden by weeds and brush. This was also correct, for the only negligence alleged in the complaint was the maintenance of the hydrant at the particular place, and allowing it to be obscured by weeds and brush. As the hydrant was lawfully there, the city was not negligent in permitting it to be there. So that the only charge of negligence, alleged in the complaint, to be considered was, that the city permitted the hydrant to be obscured by weeds and brush. In the fourth instruction, it is true, the court apparently said that two grounds of negligence were to be considered, to wit: Permitting the hydrant to be obscured by weeds and brush, and maintaining the hydrant at the particular place. This, of course, apparently contradicted instruction 2, but the addition of another ground of negligence on the part of the city in instruction number 4 could not be prejudicial to plaintiff. If the judgment had been against the city, it might have been prejudicial to the city. The plaintiff cannot complain of this. If there is any contradiction be-

tween 2 and 3, it is the same as the contradiction between 2 and 4. and is not prejudicial to the plaintiff.

In instruction number 2, the court did not say that all the city need do when it opened a street was to open a roadway wide enough for a single team to pass. What the court did say in substance was, that it may open a street for travel for vehicles from curb to curb. It is true, the court used the word "middle," but by that the court clearly referred to that portion of the street between the curb lines. And the court further said, in that instruction, that when it had so opened a roadway, it discharged its entire duty when it exercised reasonable care in keeping such roadway safe for travel in vehicles. It clearly charges the city with the duty of keeping the street in that particular place reasonably safe for travel from curb line to curb line. This may have imposed too great a duty upon the city, but it could not be prejudicial to plaintiff.

The plaintiff requested the court to instruct the jury that the city is bound to use reasonable care to keep its streets in reasonable condition for travel in an ordinary mode "by night as well as by day"; this the court refused to do. The court, however, did so instruct the jury, except that it did not use the words "by night as well as by day." When the court said "a city is bound to use reasonable care to keep its streets in a safe condition for ordinary travel," it certainly included travel "by night as well as by day," without expressly using those words. Furthermore, the plaintiff testified that it was not night, and that it was not dark, and that he could see things plainly. The other assignments of error relating to the giving and refusing of instructions, are not specific enough to merit the attention of this court. To merely say in the brief that an instruction given is

wrong, and that an instruction refused is right, without pointing out wherein it is wrong or right, does not throw any light upon the error complained of.

We are unable to find any error in the record against the plaintiff, and the judgment will, therefore, be affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.