ELLEN CROCKER

*vs.*

THE INHABITANTS OF THE TOWN OF ORONO.

Penobscot.    Opinion July 1, 1914.

*Defect.   Due Care.   Highway.   Injury.   Negligence.*

Upon the facts as disclosed by the testimony of the witnesses, as to the precise situation and character of the hole or depression, neither the jury nor the court is warranted in saying that the defendant town had failed to keep this road, at the place of the alleged accident, reasonably safe and convenient, as the statute requires.

On motion by defendant for new trial.    Motion sustained.

This is an action on the case to recover damages for injuries claimed to have been sustained by the plaintiff by reason of a defect in the highway in the town of Orono.

Plea, the general issue.    The jury found for the plaintiff in the sum of eight hundred and fifty dollars ($850.00), and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*A. G. Averill, and G. E. Thompson,* for plaintiff.

*C. J. Dunn,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, JJ.

SAVAGE, C. J.    Action to recover for injuries occasioned by an alleged defect in a highway.    The plaintiff recovered a verdict, and the case comes before this court on a motion to set it aside.

The plaintiff was a passenger on the electric railway from Bangor to Old Town.    At that time electric cars were not permitted to cross Orono bridge, so called, and the passengers were transferred from a car at one end to a car at the other end.    The car in which the plaintiff was a passenger stopped about forty feet from the bridge.    The

plaintiff alighted from the front end. Her claim as stated in her writ is that after alighting "while walking along said highway . . . and when near the entrance to said Orono bridge she stepped and fell into said hole."

The hole as described in the writ, and likewise in the "fourteen days' notice," so called, to the municipal officers, was two feet in circumference and about three and one-half feet deep. And the plaintiff, testifying, described the accident as follows: "When he [the conductor] said 'All transfer,' I got up with the rest and came out. I came out this side door, and, as I usually do, I took hold of the rail as I go down the steps, of course, everything was smooth as a floor, and I looked through the bridge to see if the car had got there on the other side; and I stepped one foot down, and when I stepped the other, I felt myself going, and it was dreadful. I thought it was an earthquake and I was being swallowed up." And on cross examination she said that she stepped "immediately from the car" into the hole, without walking any distance whatever. In her testimony she gave no further description of the hole or its location. The only inference to be drawn from the plaintiff's testimony is that there was a hole in the road so situated that in the act of alighting from the car, she stepped directly into it.

The plaintiff, however, is contradicted by the testimony of all the other witnesses, both as to the location of the hole and the manner of the accident. Among these witnesses were two called to testify by the plaintiff herself. In order to understand their testimony it is necessary to describe the road at the point of the accident. The floor of the bridge is somewhat higher than the natural level of the land surrounding it, and the road has been built up from the level to the bridge with crib work covered by earth. This made a bank on each side of the road. And to protect travelers a fence was built along the crest of each bank from the bridge at least as far as to the place where the car stopped. This fence was about six feet from the nearest rail of the electric railway, and about four feet from the car steps from which the plaintiff alighted. The roadway in general was smooth, and there was no hole at the point where the plaintiff stepped from the car.

But as is agreed by all the witnesses on both sides, except the plaintiff herself, there was a depression in the outside of the road, near and under the fence. It was about six feet towards the bridge

from the front end of the car.   It extended into the road from the fence not exceeding ten inches, for it could be completely covered by a plank lying on edge against the fence and another eight inch plank lying against the first one.   It sloped from comparatively nothing at the inner edge to a depth of from five to seven inches under the fence.   One or two of the witnesses graphically described it as looking as if a shovelful of dirt had been taken out.   The depression was caused by the crumbling away of the earth on the brow of the bank.

A little reflection will show that a traveler walking in the direction that the plaintiff would have walked to reach her other car, and walking very close to the fence, might naturally step with his right foot upon the shallowest part of the depression, but his left foot would step several inches inside of it.   And it is difficult to understand how a traveler going across from the car steps towards the hole, and in the exercise of due care, could step into the hole and fall, unless he ran into the fence.   This can easily be demonstrated.

But it was the plaintiff's left leg that went into the depression and was injured.   This indicates clearly, we think, that she was walking backward toward the bridge, and not forward toward it, when her left foot went into the depression, and the soil giving way, she was drawn down to a sitting posture, with her left leg under the fence. Although the plaintiff denies it, all the witnesses on both sides who saw it agree in substance that as the plaintiff stepped from the car she turned around and spoke with another lady.   She was then back towards the bridge and the depression, and one of her own witnesses says that she stepped backward and so into the depression.   And that this is true is confirmed by the fact, already stated, that it was her left foot that went into the depression.

Upon these facts, and keeping in mind the precise situation and character of the hole or depression, we feel compelled to say that neither the jury nor the court is warranted in saying that the defendant town had failed to keep this road at this place "reasonably safe and convenient," as the statute requires.   Towns are not insurers. They are bound only to have the roads reasonably safe.   To say that a depression like this one, at the extreme side of the road, beginning not more than ten inches from the road fence and deepening to not more than 5 or 7 inches under the fence is an actionable defect would extend municipal liability far beyond the effect of any

case that we have seen. See *Witham* v. *Portland*, 72 Maine, 539; *Morgan* v. *Lewiston*, 91 Maine, 566; *Haggerty* v. *Lewiston*, 95 Maine, 374; *Cunningham* v. *Frankfort*, 104 Maine, 208.

And if this were not so, we regard it as demonstrated that the plaintiff was stepping backward when her foot stepped into the depression, that she was paying no attention to where she stepped, and therefore that she was not in the exercise of due and reasonable care. This must defeat her action.

It is manifest, we think, that the jury erred, and that they either misunderstood the facts, or misapplied the law.

*Motion for a new trial sustained.*