## No. 12,692.

HENDERSON *v.* PEOPLE'S PHARMACY COMPANY ET AL.
(2 P. [2d] 1090)

Decided June 15, 1931.   Rehearing denied September 14, 1931.

Mr. W. E. HECKENLIVELY, Mr. J. N. RICKARDS, for plaintiff in error.

Messrs. STRACHAN & HORN, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

BENDINA Henderson sued the People's Pharmacy Company and William Rogers, who owned practically its entire capital stock, to recover damages caused, she alleged, by the intoxication of her husband, George Henderson.  Judgment was rendered for the defendants.

The action was brought under section 3719 of the Compiled Laws, which provides: ''Any wife * * * who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication of any person, shall have a right of action against any person, association or corporation that illegally furnished the intoxicating liquors that caused the intoxication of such person for all damages sustained.''

Henderson testified that in September, 1925, he began buying Jamaica ginger at the People's Pharmacy; that he continued to buy it until the government stopped the selling of Jamaica ginger; that he bought it of Rogers and his clerks two or three times a week; that he bought it to consume as a beverage; that it made him intoxicated; that the quantity he bought increased as time went on; that he drank four or five bottles a week, on an average; that when the government stopped the selling of Jamaica ginger, Rogers called him to the back of the store, and said, ''Henderson, I've got something coming in a few days that's pretty good,'' and that they ''couldn't sell Jamaica ginger;'' that he (Henderson) went there in a few days and began drinking Extract of Oats; that it was an intoxicant; that he bought it at the pharmacy; that he got drunk Saturday afternoons and nights. He identified one hundred two-ounce bottles produced at the trial, and testified that he had consumed the contents of 118 bottles of Jamaica ginger and Extract of Oats obtained by him from the pharmacy from September, 1925, to October 30, 1927. He said that he drank occasionally at the sink in the pharmacy, but mostly in the rooms where Dr. Garth and Dr. Stewart had their offices; that after he had emptied the bottles he handed them to the doctor, and the doctor put them in a box; that he (Henderson) had been drunk in the pharmacy lots of times.

Dr. Garth testified that he had seen Henderson drinking; that he had seen him with bottles labeled Jamaica

ginger and Oats; that he would get thoroughly intoxicated.

Dr. Stewart testified that Henderson used to come up to the laboratory and drink what he brought—Jamaica ginger and Oats; that he got pretty drunk; that bottles began to accumulate; that the witness washed off the labels and sterilized the bottles and used them; that the bottles that were labeled bore the label of the People's Pharmacy, which was across the alley back of the doctor's laboratory; that Henderson brought a great many of those bottles; that Henderson's wife would come for him and take him home; that if Henderson said that he drank three or four bottles on Saturday and Sunday, witness would say that he was too full to know what he was talking about; that on those days he drank ten or twelve bottles. The witness identified a carton of bottles as some of the bottles about which he testified.

Mrs. Henderson testified that her husband began drinking Jamaica ginger in 1925; that his drinking continued until the fall of 1927, increasing all the time; that he brought home bottles containing the liquid he was drinking; that she read a good many labels, and they bore the name, ''People's Pharmacy.'' She identified a carton of bottles as exactly the same as those he brought home. She said that in 1926 he stopped drinking Jamaica ginger and drank Extract of Oats; that the bottles were labeled, ''People's Pharmacy;'' that she saw not less than 150 such bottles; that she saw him at the pharmacy quite often; that she followed him without his knowing it, and would see him coming out of the People's Pharmacy, ''putting this in his pocket;'' that he would make some excuse to go to Dr. Garth's office or Dr. Stewart's office; that he would go in and drink; that sometimes he would go home, and sometimes he would not; that in 1926 she telephoned the pharmacy and asked for Mr. Rogers, and the man said he was Mr. Rogers; that she asked him not to sell her husband any more Oats, and he said that he would not sell him any more. She testified fully con-

cerning the effect of the drinking upon her husband's health and earning power and treatment of her; but as the case must go back for a new trial, we will refrain from reviewing that evidence.

Rogers testified that he is the manager and principal owner of the People's Pharmacy; that he never made any of the sales to Henderson: "I don't remember selling him any;" that he did not wait on customers ordinarily; that he had three clerks at different times— Frazier, Lynch and Huestis. Asked whether he had any telephone conversation with Mrs. Henderson about stopping the sales to her husband, he answered, "I don't think I did." Q. "Did you, or didn't you?" A. "I didn't." Shown one of the bottles introduced by the plaintiff and asked, "Is that your label on there?" he answered, "Well, it looks awfully like it." Q. "Would you say it is your label?" A. "It reads that way." The label read, "Tincture Jamaica Ginger, Double Strength, Alcohol 90 per cent." Q. "You never heard of it [Jamaica ginger] being used as a beverage?" A. "No, sir; I knew it was used by people who was sick with colic, diarrhea, and things like that." The question was repeated. A. "No, not directly, I don't see how they could use it as a beverage without they took it diluted." He identified other bottles introduced by the plaintiff and labeled, "The People's Pharmacy * * * Fluid Extract of Oats, Alcohol 85%." Witness said that in 1927, Henderson came in half drunk and witness ordered him out. He said that in 1927 Frazier told him that "the last two or three months" Henderson had "come in here drunk." Frazier was not called as a witness.

Lynch, who clerked at the pharmacy prior to 1926, testified that possibly twelve or fifteen times Henderson came in and complained of cramps and got a small bottle of Jamaica ginger; that there was nothing to indicate that he was using it as a beverage. Asked, concerning Extract of Oats, "You knew, did you not, that it was being used quite commonly as a beverage?" he answered,

"We sold it for medical purposes." Q. "Answer my question." A. "No." He said he never saw Henderson drunk or drinking.

Huestis said that he clerked at the pharmacy since June, 1926; that he does not know when Lynch left, but that witness succeeded a clerk named Frazier. He testified that he had no recollection of having sold Henderson any Extract of Oats; that he never saw Henderson intoxicated. Q. "Was Jamaica Ginger used as a beverage?" A. "I suppose that is the reason it was prohibited." Q. "And Extract of Oats is used as a beverage, is it not?" A. "It should not be." He said that Mrs. Henderson telephoned in 1926 and requested him to stop selling her husband Oats; that witness told Rogers about the conversation. Q. "Then you don't sell Extract of Oats without a physician's prescription?" A. "Sometimes we do." Witness testified that the pharmacy never sells Oats in two-ounce bottles; but the plaintiff's exhibit KK was a carton containing 100 two-ounce Jamaica ginger and Extract of Oats bottles purchased from the pharmacy; and exhibit LL was a box of two-ounce and one-ounce Jamaica ginger and Extract of Oats bottles also purchased from the pharmacy.

Henderson testified that among those in the pharmacy who sold him the intoxicants was a man named Price. Price was not called as a witness.

■ That the People's Pharmacy sold Henderson Jamaica ginger and Extract of Oats, is admitted. It is also admitted that they are intoxicating. It is claimed, however, that Rogers and his clerks did not know that Henderson used them as a beverage. The testimony of Rogers and his clerks was so evasive and incredible as to be entitled to no consideration. It did not meet the evidence for the plaintiff. Frazier, who, according to the testimony of Rogers, possessed important information, was not called to the witness stand; nor was Price, from whom Henderson said that he bought some of the intoxicants. Rogers did not deny the conversation testified to

by Henderson, concerning the expected arrival of "something that's pretty good."

One cannot read the whole record in this case without being shocked at the verdict. In *Thuringer v. Trafton,* 58 Colo. 250, 144 Pac. 866, Mr. Justice Garrigues, delivering the opinion of the court, said: "The finding of a trial court is not necessarily binding on a court of review when it clearly appears from the whole record that such finding is wrong. The power of a court of review ought not to be left paralyzed so as to prevent [the correction of] a miscarriage of justice, merely by the erroneous findings of a trial court or the verdict of a jury." That language is applicable here.

The judgment is reversed, and the cause is remanded, with instructions to try the issue of damages only.

MR. JUSTICE ALTER and MR. JUSTICE HILLIARD did not participate.