## No. 14,178.

BELCARO REALTY INVESTMENT COMPANY ET AL. *v*. NORTON.

(87 P. [2d] 1114)

Decided February 20, 1939.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. LAWS, Mr. MALCOLM LINDSEY, Mr. GLENN G. SAUNDERS, Mr. ROBERT KIRSCHWING, for plaintiffs in error.

Mr. F. E. DICKERSON, Mr. T. J. MORRISSEY, Mr. C. D. BROMLEY, for defendant in error.

Mr. WILLIAM T. WOLVINGTON, Mr. KENNETH M. WORMWOOD, Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, Mr. EDWARD L. WOOD, Mr. BERNARD J. SEEMAN, amici curiae.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an action for $30,000 damages grounded on negligence, brought by Norton against Belcaro Realty Investment Company and the City and County of Denver. Defendants, by writ of error, seek reversal of a judgment against them in the sum of $6,250. Originally, the Denver Tramway Corporation also was named as a defendant, but the jury returned a verdict in its favor. Reference

will be made to the parties as they appeared below, or by name.

The facts are substantially as follows: At about six o'clock p. m., February 20, 1935, plaintiff, Zoe Norton, a woman fifty-seven years of age, was on her way from work at the West Hotel in downtown Denver to her home on South Ogden street. She had ridden a tramway company street car out East Colfax avenue to Marion street where she alighted to transfer to a south-bound Marion street bus, also operated by the tramway company. Upon alighting from the street car, she walked to and upon the sidewalk on the south side of Colfax avenue in a south-easterly direction toward the bus-stop at the curb on the west side of Marion street. As the bus neared, she approached the curb, her forward progress toward the bus as it approached apparently being temporarily halted. It appears from the record that in laying the sidewalk at this point, there being a desire on the part of the city to preserve an elm tree that had been there for some years, the walk was so constructed as to leave a rectangular depression some four feet in size and five inches deep, to facilitate the watering of the tree. As Mrs. Norton moved back from the curb line away from the approaching bus, she stepped into this depression, lost her balance and fell against the projecting edge of the walk, thereby sustaining serious permanent injuries.

The Belcaro Realty Investment Company is the owner of a large public market building which occupies the entire frontage on the south side of Colfax avenue, extending from Marion street on the east, to Downing street on the west, and back to the alley. It is specifically admitted by the city that this company owned the real estate to the curb line of the property on which the injury occurred, and the company admits that it is the owner of certain property lying and situate south of East Colfax avenue and between Downing and Marion streets, "but, as to whether the property so owned by this defendant is the same property referred to and alleged in paragraph 1 of

said complaint, this defendant has not and cannot obtain sufficient knowledge or information upon which to base a belief.'' In any event, there is no serious dispute concerning the question of ownership of the real estate.

Both defendants admit the construction of the sidewalk out to the curb, as alleged, under a permit issued by the city and approved by the city inspector, who testified that at the time the sidewalk was under construction, in the autumn of 1934, and shortly thereafter, he ''saw it and knew of its then condition.''

The alleged negligence consisted of the construction of the sidewalk in the manner described, and maintaining the same without suitable fence, guard or other safety device, or covering the depression so as to make it reasonably safe for the ordinary travel for which it was used.

There is no serious dispute as to the extent of Mrs. Norton's injuries, nor is it contended by either of the defendants that the verdict is excessive.

There were two trials below. In the first, the jury returned a verdict of $1,200 in favor of plaintiff, whereupon her counsel moved for, and was granted, a new trial on the issue of the amount of damages alone, and it was in the second trial that the verdict for plaintiff for $6,250 was returned.

The following are presented for our consideration: (1) Both defendants rely on the alleged contributory negligence of the plaintiff. (2) A second defense of the city alleges that it was acting in its governmental capacity, and hence not liable in tort. (3) A second defense relied upon by the Belcaro Company was that said sidewalk was constructed under the supervision, order, direction, control of, and that it was approved by, the city, acting through its lawful agents. (4) Assignments of error directed to alleged improprieties in the giving and refusal of instructions. (5) Both defendants also contend that the granting of a new trial on the issue of damages alone was error.

It is conceded by counsel for both defendants that

the applicable law in cases of this character is as follows: "It is the duty of a city to maintain its streets and highways in a reasonably good condition for ordinary travel by persons using due care and prudence in the use of the same. Citizens owning property bordering upon the street have not the right to place obstructions upon such portions of the street as are intended to be used as a travelway, and the city has no right to suffer this to be done. Where it is permitted, and one lawfully upon the street and using due care, is injured because of such obstruction and without fault upon his part, the city is liable. The city is not liable, however, except in cases where an obstruction is the proximate cause of the injury, and it is not liable if the party injured could have avoided the injury by the exercise of reasonable and ordinary care and prudence." *City of Denver v. Utzler,* 38 Colo. 300, 303, 88 Pac. 143. See, also *Thunborg v. City of Pueblo,* 45 Colo. 337, 101 Pac. 399.

There is considerable dispute as to just how the accident, resulting in plaintiff's fall and injuries was caused, but defendants assume that it occurred by reason of her stepping backward into the depression, and they allege that in so doing she did not act with the reasonable and ordinary care required of a prudent person in such circumstances. We think the answer, evidently adopted by the jury is, that if there had been no depression, and if the sidewalk had been level where the accident occurred, plaintiff would not have fallen. In its consideration of the case, it evidently believed that taking a step or so backward to get out of the way of an approaching bus or street car, which is about to stop to take on passengers; was the natural thing to do.

1. Apparently, counsel for defendants here urge for the first time that plaintiff was guilty of contributory negligence as a matter of law. Several instructions on the law of contributory negligence were given the jury, and, there being no objection, we must assume that that question was properly submitted to the jury for its consid-

eration. Only one authority is cited by the defense on this point (*Crocker v. Orono,* 112 Me. 116, 90 Atl. 978), and from a reading, it clearly appears that it is distinguishable from the instant case.

In any event, this court has heretofore held that evidence of a plaintiff's movements, under substantially similar circumstances as here presented, was properly submitted to the jury on the question of contributory negligence. *Pueblo v. Sinclair,* 92 Colo. 256, 19 P. (2d) 494; *Knight v. City of La Grande,* 127 Ore. 76, 271 Pac. 41, and *City of Birmingham v. Martin,* 228 Ala. 318, 153 So. 235.

2. Was the city acting in its governmental capacity in ordering or approving the construction of the sidewalk as above described so as not to be liable in tort? To establish an affirmative answer to this question an effort was made to show that it was pursuing a policy at the time to make Denver a "city beautiful," and that a part of that policy was the preservation of such trees as the one growing in the center of the square depression into which plaintiff fell. The only evidence of such policy, which might have made it a question of law, was the introduction of section 2037 of the 1927 Municipal Code, which reads: "That no person shall move any building or other object so as to injure or interfere with any tree or shrub standing in any street, public highway or other public ground, and no person shall place any advertisement, announcement or notice upon, or print upon, any tree or shrub situate in any street, highway or other public ground."

During his interrogation on this matter, one of the foresters for the city was asked "if the city has any policy with relation to the preservation of tree life in the city * * * ?" He responded, "It is not written in any ordinance." Thus, was the door opened for the introduction of testimony on the proposition of whether or not the manner of constructing the sidewalk in order to save the tree in the present case was the result of a definite and

fixed policy. Representatives of the city admitted that there was nothing in the ordinance, or any rule or regulation, which would have prohibited the installation of "a laminated iron grating with two sides so it leaves the tree free, which fits over the edge of the depression and covers it over so water will seep freely down in and can be poured down in and yet have a level place across."

The above are examples of much of the testimony introduced on this phase of the case. The issue was submitted to the jury under the following instruction. "The defendant City and County of Denver, as a part of its defense, has alleged that in authorizing or permitting the continuation of the unpaved area referred to in the evidence, that it was acting in its governmental capacity and in pursuance of a general plan adopted while acting in such capacity. If you find that said city and county, by a preponderance of the evidence, has established the fact of the existence of such plan, and that such plan was reasonable as applied to the area involved in this case, and established that the unpaved area was authorized or permitted to continue in pursuance of such plan, then you will find for the defendant City and County of Denver, and against the plaintiff, as to that defendant." The objection to this instruction was, and is, that there is no evidence in the record to support it. Plaintiff does not contend that it does not properly state the law governing the matter. Certainly, the policy was not established as a matter of law, when it appeared from the evidence of the city's own representative that "it was not written in any ordinance," and it submitted proof on what the alleged policy was. It became then a fact to be established, as any other, and since, as to this matter the jury's conclusion was based on conflicting evidence, as appears from the foregoing excerpts, we shall not disturb it. There was sufficient competent evidence upon which to base, and to warrant the giving of, the instruction.

3. Was the defendant Belcaro Realty Investment

Company excused because it acted under the city's authority? The answer must be in the negative. Its counsel cites no case to sustain the contention that it was released from liability on this ground, and the contention is sufficiently answered by the quotation from the opinion in *City of Denver v. Utzler, supra,* and the following: This is "one of those cases where both the owner of the abutting lot and the city are under a common obligation to keep safe the sidewalk in front of such lot. * * * if the plaintiff is injured by their failure in this respect, which failure would be a common neglect of a common duty, the plaintiff would have his election to sue the defendants jointly or severally." *Elliott v. Field,* 21 Colo. 378, 381, 41 Pac. 504. See, also, *Denver v. Magivney,* 44 Colo. 157, 96 Pac. 1002, and cases therein cited.

4. In considering the instructions, we perceive no error that could possibly be prejudicial to either of the defendants. They are complete and comprehensive, are in all respects applicable to the evidence, and they correctly state the law and define the issues.

5. Having determined that the evidence was amply sufficient to authorize a jury finding that defendants were negligent, and the question of their liability having been submitted under proper instructions, we come finally to a consideration of the alleged impropriety of the action of the court in granting a new trial on the issue of the amount of damages alone. No motion for a new trial was filed by either defendant. Plaintiff in support of her motion recited, inter alia, "that the offer of the defendant the City and County of Denver made in the presence of the jury to admit that the plaintiff, being fifty-seven years of age, had a life expectancy of only approximately two years instead of more than sixteen years because of the adoption of an initiated measure awarding to persons over sixty years of age a pension of forty-five dollars per month" was prejudicial, and urged that this was the cause of the alleged inadequacy

of the verdict. While the court denied the offer and said it was merely incidental, it was, nevertheless, prejudicial to plaintiff on the issue.

After a careful review of the authorities, we are persuaded that the law is as announced by the Supreme Court of Massachusetts, as follows:

"This review of our cases demonstrates that this court continuously from early times has exercised the power of narrowing a new trial to specific points in cases where the error committed at the trial was so limited in character as with justice to both parties to be separable from the other issues determined by the first verdict. It has done this as a part of its inherent judicial authority, and not under any statute. It has exercised the power in a great variety of cases touching divers kinds of issues involved in general verdicts. The guiding principle is that, although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown. Thus the parties and the commonwealth have been saved the expense, annoyance and delay of a retrial of issues once settled by a trial as to which no reversible error appears. * * *

"If it [the court] is convinced upon a review of the whole case that the jury have settled the issue of liability fairly and upon sufficient evidence, so that dissociated from other questions it ought to stand as the final adjudication of the rights of the parties, and that there has been such gross error in the determination of damages as requires the setting aside of the verdict, that court has the power to do so, and confine a new trial to damages alone. It is a power which ought to be exercised with great caution, with a careful regard to the rights of both parties, and only in those infrequent cases where it is certain and plain that the error which has crept into one element of the verdict by no means can have affected its

494

other elements. But when a proper occasion clearly exists, it is in the interests of justice to exercise the power. * * *. No sound distinction in this regard can be made between a verdict in which excessive damages have been returned and one in which inadequate damages have been awarded. Indeed, it is said in the Opinion of the Justices, 207 Mass. 606, 609, referring to a proposed statute in terms limiting a new trial to the question of damages alone, when that is the sole ground for granting a new trial: 'In substance the section is in accordance with the general practice to grant a new trial upon the question of damages only, if the verdict is satisfactory in all particulars as a determination of the liability'." *Simmons v. Fish,* 210 Mass. 563, 97 N. E. 102, Ann. Cas., 1912 D. 588.

The above statement is consistent with that found in another case from the same jurisdiction upon which defendants rely and in which the rule is stated to be: "It is only when the reason for setting aside the verdict relates solely to damages dissociated from every other contributing, related or vitiating cause that 'the new trial shall be limited to the question of the amount of damages'." *Waucantuck Mills v. Magee Carpet Co.,* 225 Mass. 31, 113 N. E. 573.

Upon the proposition that new trials may be granted on the question of damages alone, see also our rule No. 6; *McCarty-Johnson Heating & Engineering Co. v. Frankel,* 70 Colo. 330, 201 Pac. 36; and *Henderson v. People's Pharmacy Co.,* 89 Colo. 338, 2 P. (2d) 1090.

Other questions sought to be raised, we do not deem it necessary to consider. The entire matter was well tried under the law and, as before mentioned, no claim is made that the verdict is excessive.

Judgment affirmed.

Mr. Justice Francis E. Bouck dissents.

Mr. Justice Bock did not participate.

*On Rehearing.*

Mr. Justice Francis E. Bouck dissenting.

The petitions for rehearing suggest among other alleged errors that this court seems (1) to have misapprehended the principle announced in *Simmons v. Fish,* 210 Mass. 563, 97 N. E. 102, and (2) to have misconceived the import and propriety of the affidavits of jurors who served in the original trial. I think both points are well taken.

(1) *Simmons v. Fish, supra,* is the leading case on the subject. It is expressly approved in the court's opinion herein. There can be no doubt about the existence of the power to order a new trial on the question of damages alone. The only real controversy is whether the specific facts and circumstances in a given case are such as render it improper to exercise the power.

It would be presumption for me to attempt an analysis of the able opinion by Chief Justice Rugg in the case cited, which I fear has not been correctly interpreted by the majority opinion. I merely urge that those interested in the subject read there his masterly statement of the fundamental principles involved.

(2) Counsel's argument, that affidavits of jurors in a pending case cannot be received to impeach their verdict, is as a general rule undoubtedly sound. It is clear, however, that this rule would not have been violated in the case at bar. The affidavits tendered by the plaintiffs in error, in opposition to the defendant in error's motion for a retrial of the question of damages alone, should, I think, have been received in evidence. These affidavits tended not to invalidate the verdict, but to sustain it. The five juror affiants unequivocally showed, I think, that the issues of liability and damages were intertwined beyond the possibility of segregation. The inference from their language is irresistible that the verdict was an improper

compromise between those convinced of liability and those not so convinced.

Let us examine the actual situation at the first trial.

The presiding judge displayed great skill and knowledge of the law, as well as patience, in disposing of numerous objections raised by both sides during a long trial that presented more than the usual number of intricate trial difficulties. He certainly treated the trial as a real legal controversy of no mean proportions.

For the purpose of showing that the question of liability was finally and properly settled, and to justify retrial as to damages alone, counsel for the defendant in error, evidencing commendable zeal for their client, contended in their motion (a) that the verdict clearly established and settled the liability of the defendants, (b) that there was no conflict of evidence as to the physical conditions at the scene of the accident or as to the circumstances surrounding the occurrence, (c) that full testimony as to conditions and circumstances was presented by both sides with full opportunity for cross-examination, (d) that there was no substantial dispute as to any facts involved, (e) that the great and overwhelming preponderance of testimony was in support of the jury's finding of liability, (f) that the liability was clearly shown, (g) that the instructions and rulings of the court were correct, (h) that the damages awarded were greatly inadequate, and (i) that the offer of counsel for the City and County of Denver, made in the presence of the jury, to admit that because of the old age amendment the plaintiff, being 57 years of age, had a life expectancy of only 2 years instead of the 16 years indicated by the mortality tables was prejudicial to the defendant in error and resulted in an inadequate award of damages.

It will be seen at once that many of the above lettered clauses would be valid arguments if the question were solely one of determining the sufficiency of evidence to sustain a verdict rendered. Clauses such as (b), (d) and (e), however, are not true summaries of the evidence

along the lines mentioned, for the case was hotly contested on the facts, as a careful examination of the two-volume record, comprising about 1100 folios, clearly shows. There was indeed a sharp conflict on every vital issue.

If, as the defendant in error's counsel contended, the supposed inadequacy of damages resulted from what counsel for the City and County of Denver remarked in regard to old age pensions, I submit it is not just to charge such statement against the plaintiff in error Belcaro Realty Investment Company. It seems to me that justice to all could only have been accomplished by granting a new trial of the whole case.

In conclusion I quote by way of emphasis from the opinion in *Waucantuck Mills v. Magee Carpet Co.*, 225 Mass. 31, 33, 113 N. E. 573, 574, as follows: "It was said in *Simmons v. Fish*, 210 Mass. 563, 570: 'It is only in exceptional and extremely rare instances that the inadequacy of damages will not be so interwoven with liability that justice can be done without a new trial upon the whole case.' It is hard to conceive of such a case. It is only when the reason for setting aside the verdict relates solely to damages dissociated from every other contributing, related or vitiating cause that 'the new trial shall be limited to the question of the amount of damages.' * * * Only by acting on this rule can justice be accomplished. * * * Indeed, it recently has been said that the granting of 'partial new trials' is a 'practice . . . not to be commended.' *Norfolk Southern Railroad v. Ferebee*, 238 U. S. 269, 274."

For the reasons stated, and regretting that the pressure of work prevents a proper revision of this opinion, I dissent.