No. 19,472.

James H. Walden v. Lucy May Walden.
(363 P. [2d] 168)

Decided July 3, 1961.   Rehearing denied July 31, 1961.

Messrs. Ireland, Ireland, Stapleton & Pryor, for plaintiff in error.

Mr. Norman E. Walton, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as James and to defendant in error as Lucy. The latter is the sister of defendant's deceased wife. On April 6, 1955, six weeks following the death of her sister, Lucy married James at Littleton, Colorado, at which time she was 72 and James was 78 years of age.

July 29, 1959, Lucy filed a complaint for divorce and secured an ex parte order directing James to vacate the residence in which the parties had been living. James filed his answer and counterclaim for divorce in which he denied the grounds for divorce alleged by Lucy, and affirmatively accused her of extreme and repeated acts of cruelty. The issues were tried to the court, at the conclusion of which each of the parties was found to be guilty of cruelty toward the other and a decree of divorce was granted to Lucy upon her complaint and also to James upon his counterclaim. The matter of division of property and alimony was reserved for later consideration by the trial court. February 16, 1960, following a hearing with relation to those matters, the trial court entered its judgment and decree under which the property involved in the marriage relationship was divided. James objected to the decree, contending that the trial court abused its discretion and arbitrarily made an award of property to Lucy which was far in excess of that which was justified.

At the conclusion of the evidence bearing upon the issue of whether either party was entitled to a decree of divorce, the trial court made the following comments which adequately describe the circumstances disclosed by the record:

"This is an unusual case, a case in which a seventy-six year old woman brings suit against an eighty-two year old man for divorce after a marriage of four years. It

was almost a marriage in the family, for the plaintiff testifies that the defendant had been a part of the family for fifty-four years; matter of fact, they are brother and sister-in-law and each have children by former marriages. The defendant has three children and I don't know that the evidence shows how many the plaintiff has but she has children by a former marriage.

\* \* \*

"There isn't any question but what everyone that has heard of this case is satisfied that the marriage was a mistake. It was one that was entered into on the part of the defendant in this case at the age of 78 shortly after his wife, the sister of the plaintiff, died. She had been suffering from an illness for a number of years and been a total invalid for the last few years of her life.

\* \* \*

"It was entered into by the defendant without love for the plaintiff; he states 'as a matter of convenience' and he hoped that it would work out all right. It was entered into by the plaintiff without love or affection for the defendant. She stated from the witness stand that she had a good home, that she had plenty to take care of her and she hoped it would work out all right. Well, of course, it turned out that it didn't work out all right and they came to a parting of the ways.

\* \* \*

"It is a case of an impotent, irrascible old man who is lonesome, approaching senility, marrying a woman who is of the age of seventy-two. \* \* \*

\* \* \*

" \* \* \* The present law provides that if both parties are guilty of acts which would give the other grounds for divorce the Court, in its discretion, may refuse to grant a divorce to either party or may grant a divorce to both parties.

"The Court feels that this is a case in which the defendant was guilty of extreme and repeated acts of cruelty as alleged in plaintiff's complaint and that the

plaintiff is guilty of extreme and repeated acts of cruelty as alleged in defendant's counterclaim, so both parties are entitled to a divorce."

Counsel for James relies heavily upon the admitted fact that Lucy made no substantial contribution to the accumulation of the property which was divided by the decree of the trial court. It is argued that because James made gifts to Lucy valued at $14,500.00 and because when she commenced the divorce action she withdrew $3,900.00 from the bank account which was carried in joint tenancy, it was an abuse of discretion for the trial court to award her any share in the proceeds to be derived from sale of the real estate which was occupied by the parties. In this connection it is argued by counsel that:

"The $14,500.00 of gifts and the $3,900.00 secretly taken by plaintiff from the bank account, or a total of $18,400.00 would appear to be more than fair as plaintiff's share of the limited amount of property involved. Defendant should have full title to his house and furniture, free and clear of any claim asserted by plaintiff."

The title to the real estate to which the statement is directed was voluntarily placed in the names of James and Lucy, and although she had no cash investment therein we cannot ignore completely the fact that it was the voluntary act of James which brought about the joint tenancy. The trial court ordered the real property sold and "the net proceeds distributed to the parties in equal amounts." Execution of the sale was stayed for ninety days "in order to afford the parties an opportunity to purchase each other's interest on such terms as they may decide."

In the brief of counsel for Lucy we find, inter alia, the following:

"It is true that the Plaintiff did not contribute any substantial sums of money to the assets of the parties, but that is only part of the picture. She gave up a comfortable home and adequate income to become the wife of the Defendant. Prior to the marriage, she was living

with her daughter and son-in-law and acting as assistant manager of an apartment house for which she was receiving $75.00 and room and board with everything furnished. In addition, she was receiving a pension as a widow of a Spanish-American War veteran in the amount of $50.00 a month which ceased upon her marriage to the Defendant. She is not physically qualified for employment, partially as a result of a hernia suffered while assisting the Defendant after a fall. In short, she left a life of security and assured income to become the wife of the Defendant. Although she did not contribute any substantial cash sums to the acquisition of property, she did contribute something more important — four years of her life. Four years of living with an impotent, irrascible, senile man cannot be reduced to a dollars and cents value, and anyone who could make such coarse statements as the Defendant did from the witness stand could not be a very refined person and a joy to live with. These matters should have been, and undoubtedly were, considered by the Trial Court in its decision."

There is evidence in the record which justifies the foregoing argument.

■ While we have no hesitancy in reaching the conclusion that the trial court was very generous in awarding property to Lucy, we cannot say that the award to her was an abuse of the wide discretion which rests in the trial court in such matters. It is sufficient to say that the instant case is controlled by our pronouncement in *Nunemacher v. Nunemacher,* 132 Colo. 300, 287 P. (2d) 663, from which we quote the following:

"Difficulty attends in arriving at a fair and equitable solution of matters of this kind, and the consideration thereof presents situations which in nearly every case try the patience of our courts. The instant case was tried by a seasoned judge with wide and varied experience in the field of domestic relations. The record discloses nothing which indicates, even remotely, an abuse of the judicial discretion vested in the trier of facts. He pa-

tiently heard all the evidence submitted by the parties, observed the witnesses, considered the testimony, the exhibits and affidavits offered, and after mature deliberation made his order and decree.

"If we were preparing a decree in this case we might have made other disposition of the property involved, and perhaps might have entered a different order for permanent alimony. We do not, however, regard the conclusions of the trial court, based upon the evidence, as an abuse of discretion.

"Matters of alimony and property settlement between husband and wife are within the sound discretion of the trial judge, and if supported by competent evidence will not ordinarily be disturbed on review. *Williams v. Williams,* 110 Colo. 473, 135 P. (2d) 1016; *Kleiger v. Kleiger,* 127 Colo. 86, 254 P. (2d) 426; *Mickle v. Mickle,* 125 Colo. 21, 239 P. (2d) 988. We have uniformly held that we will follow the trial court's findings in matters of this kind, if they have support in the evidence."

In *Brigham v. Brigham,* 141 Colo. 41, 346 P. (2d) 302, the foregoing language was cited with approval.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.