No. 22548.

Kenneth E. Kirk and Betty M. Kirk *v.* Bud Himes and Peggy Himes, Individually and doing business as Himes Drilling Co.

(461 P.2d 444)

Decided November 24, 1969.    Rehearing denied December 15, 1969.

HAYNIE, GOLDEN AND MUMBY, JAMES GOLDEN, for plaintiffs in error.

YOUNGE, HOCKENSMITH, STACEY AND ROBB, F. M. HOCKENSMITH, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

SHAWN KIRK, age eight, was fatally injured as a result of an automobile-bicycle collision on March 25, 1965. The

driver of the automobile was Mrs. Peggy Himes, one of the defendants. The other defendants were Peggy's husband and Himes Drilling Co. The car was owned by Peggy and her husband, doing business as Himes Drilling Co. The plaintiffs are the surviving parents of Shawn.

The plaintiffs' claim for relief was based upon the alleged negligence of Mrs. Himes in the operation of her blue station wagon. The defendants denied any negligence on the part of Mrs. Himes and affirmatively asserted by way of defense that Shawn's negligence was in part, at least, contributory to the accident.

The issues have been presented to a jury on two occasions. Both times verdicts have been returned in favor of the defendants. During its deliberations the first jury used a pamphlet, not offered in evidence, containing a chart correlating stopping distances for motor vehicles at different speeds and under various circumstances. This resulted in the granting of a new trial.

It is the second judgment which plaintiffs seek to reverse by this writ of error.

Peggy Himes was driving west at a speed of thirty to thirty-five miles per hour, on Unaweep Avenue near Grand Junction. It was late in the afternoon and the sun was low and shining into the windshield from the west-northwest. Mrs. Himes testified that she was wearing dark glasses and that the sun did not blind her nor interfere with her driving. However, shortly after crossing the intersection of Hopi Drive and Unaweep, the Himes automobile struck the rear wheel of the bicycle on which Shawn was riding. Mrs. Himes testified that she did not see Shawn prior to impact.

Shawn's route which put him onto the "black-top" some two feet from the north edge at the time of impact is a little less clear. It seems to be reasonably certain that he entered Unaweep from Hopi. Whether he obeyed the stop sign, whether he immediately took a position on the paved portion of the roadway, or traveled along the unpaved shoulder area for some distance before turning

onto the right edge of the pavement, is not clearly discernable from the physical evidence, although bicycle tracks on the wet and somewhat soft shoulder indicated that he failed to stop at the stop sign, and that he traveled on the shoulder for some distance before turning onto the pavement.

## KATHRYN VELTRY'S TESTIMONY

The observation of the only eyewitness, Kathryn Veltry, age twenty-two, was limited to what transpired at the intersection moments before the accident. This witness testified that she saw the lad on the bicycle enter the intersection of Hopi and Unaweep from the north without stopping, although there was a stop sign protecting Unaweep, and turn to his right (west). At about the same time the witness noticed a blue station wagon enter the intersection on Unaweep, traveling in a westerly direction. She then "looked away and then I heard a great big bang, and then I looked back."

Miss Veltry's testimony is relevant to the errors alleged in I and II, hereinafter set forth. It is argued by plaintiffs that but for the testimony of Kathryn Veltry there would have been no evidence to justify giving an instruction on contributory negligence, and that her testimony was "clearly irrelevant, incompetent, immaterial, and impossible." Kathryn admittedly is a retarded individual. However, her testimony in some respects was consistent with the testimony of others in relation to the physical facts in connection with the accident and inconsistent in other respects.

In this connection it should be noted that the plaintiffs did not examine the witness on *voir dire*, nor did they object to her testimony on the grounds that (1) she was of unsound mind, or (2) that she was a child under the age of ten (C.R.S. 1963, 154-1-6). To rebut Kathryn's testimony, the plaintiffs subpoenaed Mrs. Veltry, Kathryn's mother, who testified that, "at the age of 18 she had the capacity of a nine-year old" and "she is just mentally retarded." The mother also told the jury that

Kathryn had frequently told "stories which were not the truth."

Both the court and counsel agreed that the mother's testimony was for impeachment purposes. No question was raised as to the admissibility of the daughter's testimony. Under this state of the record the weight of Kathryn's testimony was for the jury alone.

ASSIGNMENTS OF ERROR

The plaintiffs contend that the court erred (1) in overruling their motion for a directed verdict; (2) in refusing to give its tendered Instruction No. 5, and (3) in giving Instruction No. 7.

I.

From our review of the testimony and the exhibits we conclude that there was conflicting evidence relating to contributory negligence on the part of the deceased child, to such an extent that it cannot be said that reasonable minds could reach no other conclusion than that the decedent was not negligent as a matter of law. Under such circumstances it would have constituted reversible error for the trial court to have directed a verdict for the plaintiffs. *Jones v. Jefferson County School District,* 154 Colo. 590, 392 P.2d 165; *Rine v. Isham,* 152 Colo. 411, 382 P.2d 535; *Lasnetske v. Parres,* 148 Colo. 71, 365 P.2d 250; *Nettrour v. J. C. Penney Co.,* 146 Colo. 150, 360 P.2d 964.

II.

Instruction No. 5, tendered by the plaintiffs but refused by the court, so far as material to a discussion of the alleged error, reads as follows:

"A person who drives any motor vehicle in a careless and imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is negligent.

"The operator of a motor vehicle whose vision through any required glass equipment is not normal is negligent."

In their brief, the plaintiffs argued that,

"* * * [T]he trial court committed error when it failed to instruct the jury that violation of the careless driving and clean windshield provisions of the Colorado motor vehicle law * * * is negligence *per se* as the tendered instruction purports to do."

The tendered instruction failed in three respects to properly advise the jury on the doctrine of negligence per se. Consequently, the error is not well taken.

Contrary to plaintiffs' argument, the tendered instruction (1) made no reference to the statutes from which the above quoted language was taken; (2) it did not set out the language of the statute *in haec verba,* but gave the plaintiffs' interpretation of the statute and, most importantly, (3) it failed to advise the jury that in order for the plaintiffs to recover damages based on a violation of the statutes, or either of them, they had to establish that the violation was the proximate cause of the child's death. *Lambotte v. Payton,* 147 Colo. 207, 363 P.2d 167; *Hertz System v. Hendrickson,* 109 Colo. 1, 121 P.2d 483.

### III.

Plaintiffs' complaint as to Instruction No. 7 is that it "unduly emphasizes the aspect of the decedent's contributory negligence without injecting the concept of last clear chance, which most certainly was an issue if Kathryn Veltry's testimony is not to be disregarded, * * *."

We agree with the plaintiffs that "last clear chance" was an issue to be decided by the jury, not only because of Kathryn Veltry's testimony, but because of other testimony. Plaintiffs' complaint is somewhat difficult to follow inasmuch as Instruction No. 8 covered "the concept of last clear chance." This leads us to believe that plaintiffs are unhappy because the *last clear chance* doctrine was not incorporated in Instruction No. 7. It has been repeatedly held by this court that it is not necessary to include all of the law in one instruction and that all of the instructions must be read together. *Frazier*

*v. Edwards,* 117 Colo. 502, 190 P.2d 126; *Blain v. Yockey,* 117 Colo. 29, 184 P.2d 1015.

Instruction No. 7, in effect, instructed the jury to find for the plaintiffs if it found Peggy Himes was negligent and that such negligence was the proximate cause of the child's death, but, on the other hand, to find for the defendants if it found that Peggy Himes was not negligent, or if it found that the contributory negligence of the decedent was a proximate cause of the accident.

Instruction No. 8 was so phrased that the jury should have had no difficulty in understanding the application of the last clear chance doctrine and its relationship to contributory negligence. It began,

"You are instructed that while the Plaintiffs may not recover any damages from the Defendants if any contributory negligence of their son was a proximate cause of the accident in which he died, the law provides that, if the decedent by his negligence had placed himself in a position of peril,"

and continued with a correct exposition of the law of last clear chance.

■ Instructions No. 7 and No. 8, when read together, correctly stated the law as to negligence, contributory negligence and last clear chance under the factual situation disclosed by the record in this case. We find no prejudicial emphasis was placed on the effect of the decedent child's contributory negligence as it related to the plaintiffs' liability.

The judgment is affirmed.

MR. JUSTICE PRINGLE, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.