**Karen T. CRESPIN, individually and on behalf of her minor children, Angela R. Crespin, Manuel Crespin III and James P. Crespin, Plaintiff-Appellee,**

v.

**LARGO CORPORATION, doing business as The New Chapter IV and Little Vegas, Defendant-Appellant.**

No. 82CA0950.

Colorado Court of Appeals, Div. I.

June 14, 1984.

Rehearing Denied Aug. 2, 1984.

Certiorari Granted April 15, 1985.

Sylvian R. Roybal, Denver, for plaintiff-appellee.

Thomas H. May, Denver, for defendant-appellant.

STERNBERG, Judge.

The plaintiff, Karen T. Crespin (the widow), individually and on behalf of her minor children, brought an action against defendant, Largo Corporation, owner and operator of a bar known as The New Chapter IV and Little Vegas (Largo), alleging that Largo's employees had negligently served alcohol to James B. Hauenstein, the driver of a car that struck and killed Manuel Crespin, her husband. A jury awarded the plaintiff $500,000, and defendant appeals from the judgment entered on the verdict. We affirm.

On March 27, 1980, a snowstorm prevented Hauenstein from returning from Denver to his home in Loveland. Hauenstein checked into a motel, had a few drinks in the motel bar, and then drove to Largo's bar where he had many more drinks. He testified that while at the bar, he suffered from periodic blackouts, that on at least one occasion he had slipped and fallen over a table or chairs on the way to the restroom, and that he had somehow lost two personal and two payroll checks. Thereafter, Hauenstein left the bar and, while driving his car, skidded into a vehicle being driven by Crespin, resulting in Crespin's death.

Some five weeks after receipt of the verdict Largo filed a motion for new trial. Included in the motion was a contention that newly discovered evidence had been uncovered after the trial.

## I.

Largo's first contention of error relates to the denial of the new trial motion. Largo argues that the trial court erred in ruling that the newly discovered witness lacked sufficient credibility, thereby usurping the jury's function as the trier of fact. We disagree.

The evidence in question consisted of the testimony of a part-time prostitute who worked for Largo in another capacity. At a hearing on the motion for new trial, she testified that she had left Largo's bar early on the evening of March 27, 1980, with Hauenstein, had gone to his motel room, and that Hauenstein had given her two $100 checks for sexual services rendered. She testified that Hauenstein eventually drove her back to Largo's bar so that she could get her car, and that he had gone back into the bar for a brief time only. She testified that when she attempted to cash the checks two days later, payment had been stopped on them.

The two checks were introduced into evidence and a handwriting expert testified that after comparing the signature on them with Hauenstein's signature on other documents, he was of the opinion that one of the signatures was definitely Hauenstein's, while the other was similar, although it lacked sufficient points for positive identification. The trial court ruled that the woman's testimony lacked sufficient credibility to alter materially the jury's findings of fact, and denied the motion for new trial.

■ A motion for new trial pursuant to C.R.C.P. 59(a)(4) is to be granted only if (1) the new evidence could not have been discovered in the exercise of reasonable diligence, (2) the evidence is material to some issue in the case, and (3) the evidence, if received, would probably change the result. *Unicure, Inc. v. Thurman,* 42 Colo.App. 241, 599 P.2d 925 (1979). Absent an abuse of discretion, a trial court's resolution of these issues will not be disturbed. *Hudson v. American Founders Life Insurance Co.,* 151 Colo. 54, 377 P.2d 391 (1962); *Unicure, Inc. v. Thurman, supra.* We find no such abuse here.

■ In order for newly discovered evidence to serve as a basis for granting a new trial, it must be credible. *Finnern v. Bruner,* 170 Neb. 170, 101 N.W.2d 905 (1960); 66 *C.J.S. New Trial* § 112 at 317 (1950).

■ The trial court found that the witness' testimony was "so incredible that I am putting virtually no credence whatsoever in it." He noted that her testimony was extremely vague, that she had previously lied to an investigator about her activities on the evening in question and about her relationship with Hauenstein, and that she had a lengthy employment relationship with Largo which continued after the accident.

■ Although, as Largo argues, determining the credibility of a witness is normally the function of the trier of fact, when dealing with a motion for new trial based on newly discovered evidence the trial court must evaluate such evidence to determine whether, if received, it would probably change the result already reached. Necessarily included in this evaluation is a determination of credibility. If this were not so, a witness having little if any credibility would necessarily mandate a new trial even though his testimony probably would not change the result. Thus, the trial court would be stripped of its discretion to evaluate whether to grant a new trial on the basis of newly discovered evidence.

## II.

Largo next contends that the trial court erred in permitting a common law "dram shop" action to supplement and alter the existing statutory dram shop or civil damage act, (§ 13–21–103, C.R.S.) and in determining that a violation of § 12–47–128(1)(a), C.R.S. (1978 Repl.Vol. 5) constituted negligence per se and gave rise to civil liability. Again we disagree.

The widow's suit was founded on three theories. One was that Largo had violated § 13–21–103. At the close of the widow's case, the trial court granted Largo's motion for directed verdict as to this theory, ruling that § 13–21–103 was not applicable in this case. That statute provides that liability will not accrue unless a "husband, wife, child, parent, guardian, or employer first, by written or printed notice, has notified [the defendant], or his agents, or employ-

ees not to sell or give away any intoxicating liquors to any habitual drunkard."

Initially the trial court also granted Largo's motion for directed verdict on the theory of common law negligence, ruling that Colorado recognized no such action against a provider of intoxicating beverages. The trial court permitted the widow to proceed on her third theory, negligence per se, for violation of § 12–47–128(1)(a). However, at the close of Largo's case, the trial court re-evaluated its earlier ruling and held that the case could also go to the jury on the theory of common law negligence, and, in light of this ruling, permitted Largo to call additional witnesses or conduct further questioning of witnesses already called. Largo declined to do so, but objected to the ruling.

### A.  Common Law Negligence

Largo first contends that the trial court erred in permitting the widow to proceed on a theory of common law negligence instead of under § 13–21–103, arguing that that statute supersedes all common law actions. We do not agree.

A necessary element of this negligence action was the existence of a duty of care owed by the defendant to the plaintiffs. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980). *Restatement (Second) of Torts* § 320, comment a, provides that "anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."

The first "dram shop" or civil damage act, was enacted in Colorado in 1879, and contained very similar wording to the present statute. In 1974, this court recognized that one injured by an intoxicated person could recover on a common law negligence theory against a tavern owner who had sold alcohol to the intoxicated person when the person was in such a condition as to be deprived of his will power, or to lack responsibility for his actions. *Kerby v. Flamingo Club, Inc.*, 35 Colo. App. 127, 532 P.2d 975 (1974). *Cf. Leppke v. Segura*, 632 P.2d 1057 (Colo.App.1981).

Contrary to Largo's argument, *Kerby* did not limit such actions to those injuries which occurred while on the tavern's premises.

We also note that § 13–21–103 does not address the issue of who is liable when an obviously intoxicated person is provided liquor and then causes injuries, so it is difficult to perceive how the statute preempts another theory of recovery in such a situation. Finally, we note that the trial court correctly instructed the jury on the definition of negligence. Thus, there was no error in permitting the widow to proceed on the common law negligence basis.

### B.  Negligence Per Se

The widow was also allowed to proceed on the theory of negligence per se. The jury was instructed that, if it found that Largo had violated § 12–47–128(1)(a), it was negligent. In its special verdict answers, the jury simply responded that it had found Largo "negligent," but did not specify the theory. Therefore, we must consider whether the trial court erred in permitting the widow to proceed under the theory of negligence per se. We find no error.

Section 12–47–128(1)(a) provides:
"It is unlawful for any person:
(a) To sell, serve, give away, dispose of, exchange, or deliver or permit the sale, serving, giving, or procuring of any malt, vinous, or spiritous liquor to or for any person under the age of twenty-one years, to a visibly intoxicated person, or to a known habitual drunkard."
Violation of this statute is a misdemeanor. Section 12–47–130(2), C.R.S. (1978 Repl.Vol. 5) (1983 Cum.Supp.). The trial court instructed the jury that a violation of this statute constitutes negligence.

The violation of an ordinance adopted for the safety of the public may be negligence per se if it is established that such violation was a proximate cause of the injury. *Lambotte v. Payton*, 147 Colo. 207, 363 P.2d 167 (1961).

There is no question that § 12–47–128(1)(a) was adopted "for the protection of the economic and social welfare and the health, peace, and morals of the people" of Colorado. Section 12–47–102(1), C.R.S. (1978 Repl.Vol. 5). However, citing *Hull v. Rund,* 150 Colo. 425, 374 P.2d 351 (1962), Largo argues that § 13–21–103 is the exclusive means of recovery in this instance. Thus, defendant argues that the trial court preempted the General Assembly by permitting plaintiffs to use § 12–47–128(1)(a) as a basis for recovery under the negligence per se doctrine.

We do not read *Hull* so restrictively. In *Hull,* the court stated that the substantially similar provisions of the predecessor to § 12–47–128(1)(a) "are penal laws and bear no relationship to liability under statutes commonly known as 'civil damage acts' or 'dramshop acts.' If plaintiffs were entitled to recover, it would be under the common law and not under the above statutes."

The *Hull* decision did not hold that a violation of this penal statute could not constitute negligence per se. Indeed, to have so ruled would have been to refuse to recognize statutory negligence, which Colorado courts have recognized on a number of occasions. *See, e.g., Calkins v. Albi,* 163 Colo. 370, 431 P.2d 17 (1967). The *Hull* court properly ruled that the statute was not a civil damage act or dram shop act. Section 13–21–103 provides that if an intoxicated person causes injury to anyone within certain limited classes of persons, then, if notice has been given, the injured person may recover from the provider of the intoxicating beverages. Section 12–47–128(1)(a) provides for no such recovery.

The widow did not recover for damages under § 12–47–128(1)(a); instead, a violation of the statute was used as evidence that Largo was negligent. Consequently, there was no error in allowing the negligence per se issue to go to the jury.

III.

We also disagree with Largo's contention that there was insufficient evidence as a matter of law to establish Largo's negligence. Questions of negligence and proximate cause are issues of fact to be determined by the jury, and an appellate court is bound by the jury's findings when there is competent evidence in the record supporting those findings. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981). The jury heard extensive testimony regarding Hauenstein's activities in Largo's establishment, and regarding the subsequent fatal automobile accident. Absent manifest error, the weight to be accorded a witness' testimony is not for an appellate court's determination. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970). We find no error.

The other contentions of error are without merit.

The judgment is affirmed.

PIERCE and BABCOCK, JJ., concur.