**LARGO CORPORATION, d/b/a The New Chapter IV and Little Vegas, Petitioner,**

v.

**Karen T. CRESPIN, individually and on behalf of the minor children, Angela R. Crespin, Manuel Crespin III, and James F. Crespin, Respondents.**

No. 84SC365.

Supreme Court of Colorado, En Banc.

Nov. 17, 1986.

Tilly & Graves, John W. Grund, K. Michele Anderson, Thomas H. May, Denver, for petitioner.

Sylvian R. Roybal, Denver, for respondents.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *Crespin v. Largo Corp.*, 698 P.2d 826 (Colo.1984). We affirm, and hold that a common law negligence action may be brought against a tavern owner who sells alcohol to an intoxicated patron who thereafter injures a third party. In such an action, the defendant's violation of section 12–47–128(1)(a), 5 C.R.S. (1985), constitutes negligence per se.

## I.

### FACTS

On March 27, 1980, James Hauenstein, who worked in Denver, was unable to return to his home in Loveland because of blizzard weather conditions. Hauenstein checked into a motel near his workplace at approximately 3:00 p.m., and had "probably half a dozen" beers at the motel bar before driving to the Little Vegas, a bar owned by petitioner Largo Corporation (Largo). At the Little Vegas, Hauenstein sat at the bar and drank two or three more beers. He then went to a booth with a woman he met at the bar and consumed an additional eight to ten beers, which were served by a cocktail waitress. While Hauenstein was in the Little Vegas, he experienced periodic blackouts and lost two payroll checks. He stumbled over chairs, tables, and stairs during several trips to the restroom. According to Hauenstein, he became "drunk" over the course of four or five hours at the Little Vegas.

Shortly after leaving the Little Vegas in his car, Hauenstein drove into oncoming traffic and collided with a car driven by Manuel Crespin. Crespin suffered fatal injuries in the accident.

Respondent Karen Crespin, the widow of Manuel Crespin, filed this action on her own behalf and on behalf of her three minor children, seeking to recover damages from Largo Corporation for the death of her husband. Crespin alleged that Largo's employees negligently served alcoholic beverages to Hauenstein after he became visibly intoxicated, and that such negligence was the proximate cause of Manuel Crespin's death. Crespin also claimed that Largo was liable because its employees violated sections 12–47–101 to –143, 5 C.R.S. (1985), of the Colorado Liquor Code, by serving alcoholic beverages to Hauenstein when he was intoxicated. Although not specifically characterized as such, Crespin's second claim for relief was a negligence per se claim predicated upon Largo's alleged violation of the Liquor Code.

Largo filed a motion to dismiss Crespin's complaint for failure to state a claim upon which relief could be granted. Largo maintained that Colorado's dramshop act, section 13–21–103, 6 C.R.S. (1973), provides the exclusive remedy against a tavern owner who negligently furnishes alcohol to an intoxicated person who thereafter injures a third party. With respect to Crespin's negligence per se claim, Largo asserted that the claim should be dismissed because violations of the liquor code do not provide a foundation for civil liability.

The trial court denied Largo's motion, and held that the dramshop act did not preclude Crespin's common-law negligence action. In the court's view, Crespin could recover against Largo if she proved that it breached a duty not to serve alcohol to a visibly intoxicated person, and that the breach proximately caused Manuel Crespin's death. In addition, the trial court refused to dismiss Crespin's negligence per se claim. The court held that section 12–47–128(1)(a), 5 C.R.S. (1985), prohibits the sale of alcohol to a visibly intoxicated person, and was enacted to prevent the type of injury that Manuel Crespin suffered. The trial court concluded that Crespin was a member of the class of persons protected by the statute and, based on the facts alleged in the complaint, negligence per se was an issue to be determined at trial.

At the close of Crespin's evidence, the trial court granted a directed verdict for Largo on Crespin's common-law cause of action, but allowed the negligence per se claim to go forward. However, at the close of Largo's evidence, the trial court reversed its earlier ruling and permitted Crespin's common-law claim and negligence per se claim to go to the jury.[1] In a special verdict, the jury found that Largo was negligent, and that such negligence proximately caused Manuel Crespin's death, but did not specify which of Crespin's theories it relied upon in reaching the verdict. The jury awarded Crespin $500,000 in compensatory damages, and the trial court entered judgment on the verdict. Largo's motion for a new trial was denied.

The court of appeals affirmed, and rejected Largo's contention that the dramshop act was Crespin's exclusive remedy for the injuries to her husband. The court of appeals held that Largo owed a duty to Crespin not to serve Hauenstein alcoholic beverages when he was intoxicated, and that the trial court's instruction regarding negligence per se was proper. We have not previously determined whether Colorado recognizes common-law dramshop liability.

## II.

## COMMON–LAW DRAMSHOP LIABILITY

Until the late 1950's, it was universally held that a common-law negligence action could not be brought by a third party against a tavern owner who sold alcoholic beverages to an intoxicated person. *See* Rinden, *Judicial Prohibition? Erosion of the Common Law Rule of Non-Liability for Those Who Dispense Alcohol*, 34 Drake

---

1. Explaining the basis for the reversal, the trial court relied upon *Kerby v. Flamingo Club, Inc.*, 35 Colo.App. 127, 532 P.2d 975 (1975). The court stated:

   Contrary to the statements made by the Court at mid-trial, it appears that in that case the Colorado Supreme Court [sic] as a direct holding has adopted the common law negligence rule which had previously been alluded to as *dictum* in the *Rund* case [*Hull v. Rund,* 150 Colo. 425, 374 P.2d 351 (1962)].

   *Kerby* was a wrongful death action filed by the wife of a cab driver who suffered fatal injuries during an altercation with several intoxicated patrons in the parking lot of the defendant's bar. The wife alleged that the bar negligently failed to supervise its parking lot and failed to intervene in the fight. The wife also asserted that the bar negligently served alcohol to the assailants when they were in an intoxicated condition. The court of appeals upheld a jury verdict against the bar. Citing *Hull v. Rund,* 150 Colo. 425, 374 P.2d 351 (1962), the court of appeals stated:

   A tavern owner is liable to one who is injured by the intoxication of his patrons if the tavern owner furnishes alcohol to those patrons when they are in such a condition as to be deprived of their will power or lack of responsibility for their behavior.

   *Kerby,* 35 Colo.App. at 133, 532 P.2d at 979.

L.Rev. 937, 938 (1985–86). The rationale underlying the rule was that the consumption, and not the furnishing of alcohol, was the proximate cause of the injury to the third party. *See Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); *Klingerman v. SOL Corp. of Maine,* 505 A.2d 474 (Me.1986). In the past twenty-five years, however, an increasing number of courts, now a majority, have rejected the traditional rule and permitted negligence actions against vendors of alcoholic beverages. *See Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); Note, *Crespin v. Largo Corporation and the Legislative Response: The Turbulent State of Dram Shop Liability in Colorado,* 57 U.Colo.L.Rev. 419, 423 (1986).

The modern era of dramshop liability began in 1959, when two courts—the Seventh Circuit in *Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir. 1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960), and the New Jersey Supreme Court in *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959)—held that a third party injured by an intoxicated person may bring a negligence action against the commercial vendor who sold liquor to the intoxicated person. Both decisions rejected the defendants' contention that the sale or service of an alcoholic beverage could not, as a matter of law, be the proximate cause of injury to a third party. The *Rappaport* court said: "Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor." 156 A.2d at 8. The court concluded that the danger was "particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent." *Id.*

Since *Waynick* and *Rappaport,* the overwhelming majority of courts have abandoned the old common-law rule and allowed negligence actions against commercial vendors of alcoholic beverages. *See, e.g., Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); *Ono v. Applegate,* 62 Hawaii 131, 612 P.2d 533 (1980); *Klingerman v. SOL Corp. of Maine,* 505 A.2d 474 (Me. 1986); *Jardine v. Upper Derby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964). *See generally* Annot., *Common-Law Right of Action for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit-Forming Drug to Another,* 97 A.L.R.3d 528 (1980). Commentators have applauded the new trend. *See, e.g.,* Colman, Krell & Mosher, *Preventing Alcohol-Related Injuries: Dram Shop Liability in a Public Health Perspective,* 12 W.St.U.L.Rev. 417 (1985); Rinden, *Judicial Prohibition? Erosion of the Common Law Rule of Non-Liability For Those Who Dispense Alcohol,* 34 Drake L.Rev. 937 (1985–86); Note, *Crespin v. Largo Corporation and the Legislative Response: The Turbulent State of Dram Shop Liability in Colorado,* 57 U.Colo.L. Rev. 419 (1986); Comment, *Third Party Liability for Drunken Driving: When "One for the Road" Becomes One for the Courts,* 29 Vill.L.Rev. 1119 (1983–84).

Largo cites *Hull v. Rund,* 150 Colo. 425, 374 P.2d 351 (1962), for the proposition that Colorado adheres to the traditional common-law rule of nonliability. *Hull,* however, did not resolve the question we address here. In *Hull,* the plaintiffs were attacked by two intoxicated patrons of the defendant's tavern. The plaintiffs alleged that the defendant had violated the Liquor Code by selling alcohol to one of the assailants while she was intoxicated. On the basis of the trial court record, we said:

> Plaintiffs based their action entirely on the theory of strict liability, predicating their right to recover on the proposition that the statute was violated and that proof thereof ipso facto entitled them to judgment as a matter of law....

150 Colo. at 426, 374 P.2d at 352.

We specifically noted that the plaintiffs had not relied upon a negligence theory:

"There was no allegation in the complaint and no proof at the trial that defendant failed to exercise due care or failed to protect plaintiffs against unforeseen danger...." *Id.* We upheld the trial court's dismissal of the action and refused to impose strict liability on tavern owners for violation of Liquor Code provisions prohibiting the sale of alcohol to an intoxicated person. We stated: "If plaintiffs were entitled to recover, it would be under the common law and not under the above statutes." 150 Colo. at 427, 374 P.2d at 352. We then noted a general rule imposing limited common-law liability on tavern owners, but held that the plaintiff did not plead or prove facts sufficient to bring the case within the rule.

It is idle to speculate whether the *Hull* court would have joined the new trend in allowing negligence actions against vendors of alcoholic beverages if the issue had been squarely before the court. It is sufficient for our purposes to note that the discussion of common-law dramshop liability in *Hull* was pure dictum and does not control our decision today.

### Common Law Negligence

To establish a prima facie case of negligence, the plaintiff must establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) which proximately caused (4) damage to the plaintiff. *Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986).

#### A. Duty

▮▮▮ Where a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm. *Leake v. Cain,* 720 P.2d at 160; *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980). The existence of a duty is a question of law to be determined by the court. *Smith v. City and County of Denver,* 726 P.2d 1125 (Colo.1986).

In determining whether the law should impose a duty on the defendant to avoid a particular harm to the plaintiff, the court must consider several factors, including the extent, foreseeability and likelihood of injury, the social utility of the actor's conduct, the magnitude of the burden placed on the defendant to guard against the injury, and the consequences of placing that burden on the defendant. *Smith v. City and County of Denver,* 726 P.2d 1125 (Colo.1986).

▮▮▮ Any reasonable person would foresee that an intoxicated person will act with a lack of prudence, control, and self-restraint. With travel by automobile both commonplace and necessary in today's society, no one may justifiably claim ignorance of the danger posed by one whose abilities and judgment are impaired by alcohol. The harm is both likely and foreseeable, and the societal cost of alcohol-related injuries is enormous. Balancing the foreseeability, likelihood and extent of the probable injury against any conceivable "utility" of serving an intoxicated person more alcohol than he or she can safely consume, we must conclude that a commercial vendor of alcohol owes a duty to third parties to act with reasonable care in the service of alcoholic beverages to its patrons.

In addressing the third factor, the magnitude of the burden placed on the defendant to guard against the injury, Largo contends that we should not recognize a duty in this case because it is impossible to determine whether a person is intoxicated, and a tavern owner will never know whether it is breaching its duty to third persons by serving additional drinks to its patrons. We are unpersuaded. We do not impose strict liability on tavern owners. Tavern owners are liable only if the plaintiff can prove that they acted in a manner that was unreasonable under the circumstances. The General Assembly evidently concluded that it is possible to determine whether a person is "visibly intoxicated" when it forbade the sale or service of alcohol to such a person. We likewise believe that a tavern owner can, in the exercise of reasonable judgment, determine whether a person is fit to consume additional alcohol.

■ Finally, as to the consequences of imposing such a burden upon tavern owners, we reject Largo's claim that civil liability for the negligent sale of alcohol would impose insurmountable proof problems on tavern owners. Whatever problems of proof exist, the plaintiff will be confronted with the same obstacles in reconstructing the facts, and the plaintiff, not the defendant, will bear the burden of proving a breach of duty. In the present case, the jury's verdict that Largo breached its duty to Crespin was based on sufficient evidence, and must be affirmed on appeal. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313, 318 (Colo.1980). In concluding that a tavern owner has a duty of care to third parties who might be harmed as a consequence of his serving alcoholic beverages to an intoxicated person, we join the majority of jurisdictions that have considered the issue, and make the tavern owner's common law duty uniform with that already imposed by statute. *See* § 12–46–112(1)(b)(I), 5 C.R.S. (1985); § 12–47–128(1)(a), 5 C.R.S. (1985) (prohibiting the sale or service of alcoholic beverages to a visibly intoxicated person).

B. *Proximate Cause*

The conceptual obstacle to recognizing a causal relation between the sale of alcohol beverages and the injury to a third party is that the service of alcohol is not the immediate cause of the plaintiff's injuries. Under the old common-law rule, the person who consumed alcohol became a superseding cause of the injury and broke the causal relation between the vendor's conduct and the plaintiff's injuries.

■ We reject the rule as outdated and ill-reasoned. In *Ekberg v. Greene,* 196 Colo. 494, 588 P.2d 375 (1978), we stated: Where the circumstances make it likely that defendant's negligence will result in injuries to others and where this negligence is a substantial factor in causing the injuries sustained, the requirement of proximate causation is satisfied. An intervening act of a third party does not absolve the defendant from responsibility if that act is reasonably and generally foreseeable.

*Id.,* 196 Colo. at 497, 588 P.2d at 377. An intentionally tortious or criminal act of a third party does not break the causal chain if it is reasonably foreseeable. *Id.* at 496, 588 P.2d at 376. The existence of proximate cause is a question of fact for the jury and only in the clearest of cases, where reasonable minds can draw but one inference from the evidence, does the question become one of law to be determined by the court. *Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974).

■ We believe a jury could reasonably find that Largo's negligent service of alcohol to Hauenstein would likely result in injuries, and that such negligence was a substantial factor in causing injuries to the plaintiff. A jury also could find that Hauenstein's intervening tortious act was reasonably foreseeable. For the same reasons that a tavern owner owes a duty to a third party injured by a patron to whom it negligently furnished liquor, we cannot hold as a matter of law that the injury cannot be foreseen by an experienced vendor of alcoholic beverages. As the California Supreme Court said in *Vesely v. Sager,* 5 Cal.3d 153, 486 P.2d 151, 95 Cal.Rptr. 623 (1971):

[W]e find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication.... [Furnishing an alcoholic beverage to an intoxicated person is a proximate cause] because the consumption, resulting intoxication, and the injury-producing conduct *are foreseeable intervening causes,* or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.

*Id.* at 164, 486 P.2d at 159, 95 Cal.Rptr. at 631 (emphasis added). While the chain of causation in some cases may be so attenuated that a court must rule as a matter of law that proximate cause was not proved,

the question in this case remains one for the jury. Largo's employees served ten to thirteen beers to Hauenstein over the course of four to five hours, and during that time Hauenstein suffered periodic blackouts, lost two payroll checks, and stumbled over chairs, tables, and stairs during several trips to the restroom. Under those circumstances, a jury could find that Hauenstein's consumption of alcohol and subsequent tortious conduct were reasonably foreseeable acts that do not relieve the tavern owner of liability.

We therefore conclude that the trial court properly submitted Crespin's negligence claim to the jury. It is only logical to apply conventional tort principles to questions involving the liability of tavern owners in the same manner that tort principles are generally applied. The old common-law rule created artificial distinctions and afforded tavern owners and other commercial vendors of alcohol special protection not enjoyed by other tortfeasors.

Largo claims that even if the former common-law rule should be abrogated, the policy concerns relating to dramshop liability are so numerous and complex that only the General Assembly is able to adequately address the problem. Indeed, Largo contends that the matter has been constitutionally committed to the General Assembly by Article XXII of the Colorado Constitution, which provides that the manufacture, sale and distribution of intoxicating liquors shall be performed under statutes enacted by the General Assembly. It is precisely this reasoning that has led a small number of courts to refuse to join the modern trend in dramshop cases. *See, e.g., Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (1985); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976).

We disagree. Although Article XXII requires that the distribution of alcohol be performed under statutes enacted by the General Assembly, it does not remove the power inherent in the judiciary to decide the common law questions of duty, breach of duty and proximate cause. It is the province of the judiciary to develop, interpret, and apply the common law, and nowhere in Article XXII does there appear an intent to preempt the field of common law rights and responsibilities. While the General Assembly is free to abrogate or modify the common law, until this year the question of dramshop liability has been left to the courts to decide. We do not go beyond the proper sphere of the judiciary, nor do we encroach upon legislative prerogatives, by reevaluating common-law rules in light of present circumstances.

### III.

#### *Preemption of Common-Law Liability by the Dramshop Act*

Largo maintains that even if an action for negligently serving alcohol to an intoxicated person is not barred by common law principles, the action has been preempted by the Colorado Dramshop Act. The act provides:

> **13–21–103. Damages for selling liquor to drunkard.** Every husband, wife, child, parent, guardian, employer, or other person who is injured in person, or property, or means of supports by any intoxicated person, or in consequence of the intoxication of any person, has a right of action, in his name, against any person who, by selling or giving away intoxicating liquors to any habitual drunkard, causes the intoxication, in whole or in part, of such habitual drunkard; and all damages recovered by a minor under this section shall be paid either to the minor or his parent, guardian, or next friend, as the court directs. The unlawful sale or giving away of intoxicating liquors works a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon the premises. No liability shall accrue against any such person as provided unless the husband, wife, child, parent, guardian, or employer first, by written or printed notice, has notified such person, or his agents, or employees not to sell or

give away any intoxicating liquors to any habitual drunkard.

Section 13–21–103, 6 C.R.S. (1973).

Largo's position is based on the following reasoning: Article XXII of the Colorado Constitution provides that the manufacture, sale, and distribution of intoxicating liquors shall be performed exclusively under statutes enacted by the General Assembly. The General Assembly has fulfilled its constitutional mandate by enacting comprehensive legislation pertaining to alcoholic beverages. *See* Colorado Beer Code, §§ 12–46–101 to –118, 5 C.R.S. (1985); Colorado Liquor Code, §§ 12–47–101 to –143, 5 C.R.S. (1985). In the dramshop act, the General Assembly detailed the scope of civil liability for improperly furnishing alcohol to one who injures a third party. The dramshop act reflects the General Assembly's intention to preempt the area of civil liability addressed by the Act, and this court is therefore precluded from expanding common law dramshop liability.

Although Largo's contention finds support in the decisions of courts outside of Colorado, *see, e.g., Browder v. International Fidelity Insurance Co.,* 413 Mich. 603, 321 N.W.2d 668 (1982), we decline to so construe our dramshop act. Colorado's dramshop act provides a cause of action under extremely limited circumstances, and has never been significantly modified or repealed. The dramshop act grants an action only against a person who (1) sells or gives alcoholic beverages, (2) to a "habitual drunkard," (3) who consequently becomes intoxicated and injures a third party, (4) provided the defendant has received written or printed notice not to sell or give alcoholic beverages to the habitual drunkard.[2] We have found no reported case in Colorado in which damages were awarded under this statute.

In contrast, the Michigan dramshop act, held to be the exclusive remedy in *Browder*

*v. International Fidelity Insurance Co.,* 413 Mich. 603, 321 N.W.2d 668 (1982), is written very broadly. It provides a cause of action against one who furnishes alcohol to a visibly intoxicated person, if the sale is proven to be the proximate cause of the injury. *Id.,* 321 N.W.2d at 672. The Michigan act establishes a two-year statute of limitations, provides for the survival of actions in the event the victim dies, and contains a financial responsibility provision and an anti-collusion device. *Id.* After reviewing the detailed provisions of the act, the Michigan Supreme Court concluded:

> [T]he Legislature intended the dramshop act to be a complete and self-contained solution to a social problem not adequately addressed at common law.. The plain and unambiguous language, together with the built-in checks and balances adopted by the Legislature to finely hone the rights and obligations of the parties under the act, lead to only one conclusion: the Legislature intended the statutory action ... to be the exclusive remedy....

*Id.,* 321 N.W.2d at 675. Unlike the Michigan act, Colorado's dramshop act is very narrowly drawn. *See* Note, *Crespin v. Largo Corporation and the Legislative Response: The Turbulent State of Dram Shop Liability in Colorado,* 57 U.Colo.L. Rev. 419, 425 n. 44 (1986). The Colorado act is not nearly as detailed as the Michigan statute in providing rules for dramshop cases, and the Colorado General Assembly has not "carefully considered and reconsidered the dramshop act [in numerous amendments] to keep it internally balanced." *Browder,* 321 N.W.2d at 674.

The history of the dramshop act and liquor regulation in Colorado also reveals that the General Assembly did not intend the dramshop act to preempt common law liability. The act was adopted over 100

---

2. In some states, violation of the dramshop act creates strict liability. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* 581 (5th ed. 1984). Our statute is silent on the issue, stating only that the plaintiff "has a right of action" against the person who furnished alcohol in violation of the statute. As liability in this case was not predicated upon the dramshop act, we do not consider whether the statute imposes strict liability on the violator.

years ago as "An Act to Suppress Intemperance." 1879 Colo.Sess.Laws 92, 92–93. The 1879 act established both civil and criminal penalties for furnishing liquor to a habitual drunkard, and provided for the forfeiture of lease rights held by the vendor. Except for minor and insignificant changes, the civil provisions of the 1879 act are identical to section 13–21–103, 6 C.R.S. (1973), the current dramshop act. *See* Revised Statutes of Colorado § 2068 (1908); Compiled Laws of Colorado § 6308 (1921); Colorado Statutes Annotated, Ch. 50, § 7 (1935); section 41–2–3, 3 C.R.S. (1953); section 41–2–3, 3 C.R.S. (1963); section 13–21–103, 6 C.R.S. (1973). The criminal provisions of the 1879 act were moved from the dramshop act to the Criminal Code in 1883, *see* General Statutes of Colorado §§ 1035, 854 (1883), and have never been reincorporated into the dramshop act.

In 1915, in response to prohibition, the General Assembly completely prohibited the manufacture and sale of intoxicating liquors in Colorado. Ch. 98, sec. 2, 1915 Colo.Sess.Laws 275. At the same time, the General Assembly enacted a civil liability provision that was substantially broader in scope than the dramshop act. Ch. 98, sec. 19, 1915 Colo.Sess.Laws, 275, 284–85. The act provided:

> Sec. 19. CIVIL · LIABILITY—Any wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication of any person, shall have a right of action against any person, association or corporation that illegally furnished the intoxicating liquors that caused the intoxication of such person for all damages sustained.

In contrast to the dramshop act, the 1915 civil liability provision was not restricted to sales or gifts of alcohol to a "habitual drunkard," and did not require that prior notice be given to the defendant. *See Henderson v. People's Pharmacy Co.*, 89 Colo. 338, 2 P.2d 1090 (1931).

In 1933, Article XXII of the Colorado Constitution repealed prohibition and all other existing laws relating to intoxicating liquors. Article XXII delegated to the General Assembly the power to regulate the manufacture, sale, and distribution of alcohol, and the General Assembly exercised its authority in the 1933 extraordinary session. New legislation governing the manufacture and sale of alcoholic beverages was enacted, including a civil liability provision that was identical to the dramshop act. Ch. 12, sec. 24, 1933 Colo.Extra.Sess.Laws 76, 87.

In 1935, the General Assembly repealed the emergency alcohol legislation of 1933 and enacted the 1935 Liquor Code. Ch. 142, secs. 1–35, 1935 Colo.Sess.Laws 597. The 1933 civil liability provision was not retained, and for fifty years the General Assembly made no provision relating to the civil liability of those who dispense alcohol. In the last two years, however, the General Assembly has enacted detailed legislation addressing the civil liability of the social host and the commercial vendor of alcohol.[3]

---

**3.** In 1985, the General Assembly amended section 12–46–113 of the Beer Code and section 12–47–128 of the Liquor Code to provide retail sellers of alcoholic beverages with a good faith defense to civil actions under certain circumstances. Ch. 114, sec. 1, § 12–46–112(1)(b)(III), 1985 Colo.Sess.Laws 540, 541; Ch. 114, sec. 3, § 12–47–128(5)(a)(IV), 1985 Colo.Sess.Laws 540, 543. *See* §§ 12–46–112(1)(b)(III), 12–47–128(5)(a)(IV), 5 C.R.S. (1985). The amendments became effective on July 1, 1985, and apply to acts committed on or after that date. Ch. 114, sec. 5, 1985 Colo.Sess.Laws 540, 544.

In 1986, the General Assembly again addressed the civil liability of purveyors of alcohol in comprehensive legislation. Ch. 100, secs. 1, 2, §§ 12–46–112.5, 12–47–128.5, 1986 Colo.Sess.

Laws 657, 657–659. The 1986 amendments make dramshop liability strictly a creature of statute in Colorado. Under the new laws, a commercial vendor of alcohol is liable to one who suffers injuries because of the intoxication of a person due to the sale or service of alcoholic beverages, if the vendor willfully and knowingly sold or served alcohol to a minor or visibly intoxicated person. The amendments provide a one-year statute of limitations, state that the intoxicated person does not himself have a cause of action against the vendor, and limit damages to $150,000. The amendments also limit the liability of the social host by providing a cause of action only against one who willfully and knowingly furnishes alcohol to a minor. The social host provisions contain the same

Those amendments do not apply to this case, which arose before that legislation was adopted.

Article XXII of the Colorado Constitution, upon which Largo relies in its preemption argument, was ratified more than fifty years after the Colorado dramshop act was enacted. There is simply no historical or logical relationship between the dramshop act—"an act to suppress intemperance"—and Article XXII, which repealed prohibition. Nor is there a relationship between the dramshop act and the Beer and Liquor Codes; with the exception of a narrow civil liability provision in effect between 1933 and 1935, the General Assembly has not addressed dramshop liability in the statutes dealing with alcoholic beverages.

The title of the dramshop act—"An Act To Suppress Intemperance"—reflects a legislative attempt to curtail the availability of alcohol to the intemperate, not an intention to provide relief for those victimized by the conduct of intoxicated persons. The reach of the dramshop act goes no further than the consequences of furnishing alcohol to a "habitual drunkard" after appropriate notice has been given. The act does not address the civil liability of those who serve alcohol to minors or intoxicated persons who are not "habitual drunkards." The statute therefore provides only limited relief to a small class of persons. The main thrust of the statute, as indicated by the title and the provisions relating to forfeiture of lease rights and criminal penalties, is deterrence, not relief. The provision of the act granting a civil cause of action was but a narrow exception to the old common-law rule that vendors of alcohol could not be held liable for injuries sustained by third parties. Neither expressly nor impliedly does the dramshop act preempt the field of civil liability or provide the exclusive remedy against vendors of alcoholic beverages.

limitations on actions and liability as the commercial vendor provisions.

4. In holding that a violation of section 12–47–128–(1)(a) establishes negligence per se, the

## IV.

## NEGLIGENCE PER SE

The trial court submitted the following instruction to the jury:

You are instructed that at the time of the accident involved in this case there existed a State statute, C.R.S., 1973, 12–47–128(1)(a), which provided as follows:

"It is unlawful for any person: (a) to sell, serve, give away, dispose of, exchange, deliver or permit the sale, serving, giving, or procuring of any malt, vinous, or spirituous liquor to or for any person under the age of twenty-one years, to a visibly intoxicated person, or to a known habitual drunkard."

A violation of the State statute constitutes negligence. . . .

The court of appeals held that the trial court properly submitted the issue of negligence per se to the jury. *Crespin v. Largo Corp.*, 698 P.2d 826, 830 (Colo.App.1984). We agree.

Negligence per se serves to establish the existence of the defendant's breach of a legally cognizable duty owed to the plaintiff. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 220, 230 (5th ed. 1984). The standard of conduct is adopted by the court from the statute or ordinance, and violation of the enactment conclusively establishes negligence. *Reed v. Barlow*, 153 Colo. 451, 454, 386 P.2d 979, 981 (1963); CJI–Civ.2d 9:14. *See also* Restatement (Second) of Torts § 286 (1965); W. Prosser, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law or Torts* 229–30 (5th ed. 1984). The party seeking to recover under the doctrine of negligence per se must show not only that the defendant violated the statutory standard, but also that the violation was the proximate cause of the injuries sustained.[4] *Kirk v. Himes,*

court of appeals cited *Lambotte v. Payton*, 147 Colo. 207, 363 P.2d 167 (1961), and said: "The violation of an ordinance adopted for the safety of the public may be negligence per se if it is

170 Colo. 378, 461 P.2d 444 (1969); *Lambotte v. Payton*, 147 Colo. 207, 363 P.2d 167 (1961); *Hertz Driv-Ur-Self System, Inc. v. Hendrickson*, 109 Colo. 1, 121 P.2d 483 (1942). A criminal statute may be relied upon to establish negligence per se even though the statute is silent on the issue of civil liability. *Nazareno v. Urie*, 638 P.2d 671, 675 (Alaska 1981); Restatement (Second) of Torts § 286 comment d (1965).

■ Before the statutory standard is used to prove negligence, the plaintiff must show that he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent. *Dunbar v. Olivieri*, 97 Colo. 381, 50 P.2d 64 (1935); *Iverson v. Solsbery*, 641 P.2d 314 (Colo.App.1982).

■ Again relying on *Hull v. Rund*, 150 Colo. 425, 374 P.2d 351 (1982), Largo asserts that section 12–47–128(1)(a) may not be relied upon to establish negligence per se. We disagree. Our opinion in *Hull* is binding authority only to the extent that it addressed plaintiff's theory that the defendant's violation of the provisions of the Liquor Code prohibiting the sale of alcohol to intoxicated persons made the defendant strictly liable for the tortious acts of his patrons. That decision did not concern principles of negligence, and is not controlling in this case. A statutory cause of action is independent of common-law principles and may, in fact, be inconsistent with those principles. For example, the first dramshop act in this state, allowing as it did a statutory cause of action against one who furnishes liquor to a habitual drunkard, was contrary to common-law principles

then prevailing. In contrast to a statutory cause of action, the doctrine of negligence per se is a part of the common law, created by the courts.

We have little difficulty in concluding that section 12–47–128(1)(a) was designed at least in part to protect third parties from injuries caused by the provision of alcohol to a visibly intoxicated person. The purpose of the Liquor Code is to protect "the economic and social welfare and the health, peace, and morals of the people" of Colorado. Section 12–47–102(1), 5 C.R.S. (1985). Although the legislative declaration of the Liquor Code does not mention safety as one of its concerns, we have previously held that the protection of public safety is in fact one of the purposes of the Code. *New Safari Lounge, Inc. v. City of Colorado Springs*, 193 Colo. 428, 567 P.2d 372 (1977). That the furnishing of liquor to one who lacks the judgment to drink responsibly poses a threat to the safety of others is obvious. It is true that many provisions of the Liquor Code have little relation to the safety of the public, but the General Assembly can have numerous objectives in enacting a statutory scheme governing an entire industry. *Ontiveros v. Borak*, 135 Ariz. 500, 667 P.2d 200 (1983). Section 12–47–128(1)(a) unquestionably reflects a legislative concern for the clear dangers surrounding the sale or provision of alcohol to those who cannot safely consume it—intoxicated persons, minors, and habitual drunkards. Furnishing alcohol to those persons presents a risk not only to the health and well-being of the drinker, but also to the safety of those with whom the drinker comes into contact. We therefore hold that section 12–47–128(1)(a) exists to protect the plaintiff from the type of

established that such violation was a proximate cause of the injury." *Crespin*, 698 P.2d at 829. We caution that the question of whether a plaintiff or defendant may avail himself of the doctrine of negligence per se is not dependent on proof of causation, a point made clear by *Lambotte*, when we said: "The violation of a statute or ordinance enacted for the protection of persons or property does not ipso facto import liability unless the violation [is] shown by proper proof to have been the proximate cause of the

injury." *Lambotte*, 147 Colo. at 208–09, 363 P.2d 168.

Thus, although the defendant in *Lambotte* violated a motor vehicle ordinance and was negligent per se, we upheld the trial court's conclusion that the plaintiff's injuries were not caused by the defendant's violation of the ordinance. A defendant therefore may engage in conduct that is negligent per se, yet escape liability if the plaintiff cannot prove a causal relationship between the negligence and the injuries sustained.

injuries that occurred to her husband, and that Largo's violation of the statute may be relied upon to establish the existence and breach of a legally cognizable duty owed to her. We note that our conclusion is supported by the overwhelming majority of courts that have considered whether similar statutes may be used to prove negligence. *See, e.g., Waynick v. Chicago's Last Department Store,* 269 F.2d 322, 325 (7th Cir.1959) (a statute forbidding the sale of alcohol to an intoxicated person exists for the protection of any member of the public who might be injured or damaged as a result of the drunkenness to which the particular sale of alcohol contributes), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960); *Vance v. United States,* 355 F.Supp. 756, 759 (D.Alaska 1973) (a statute prohibiting the sale of liquor to an intoxicated person is designed at least in part to protect against personal injuries caused by intoxication); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959) (the broadly expressed prohibitions against the sale of alcohol to a minor or intoxicated person were not narrowly intended to benefit the minors and intoxicated persons alone, but were wisely intended for the protection of members of the general public as well); *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977); *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973). *See also* Note, *Crespin v. Largo and the Legislative Response: The Turbulent State of Dram Shop Liability in Colorado,* 57 U.Colo.L. Rev. 419, 427 (1986).

We turn finally to the question of the effect of defendant's violation of section 12–47–128(1)(a). The trial court instructed the jury that a violation of the statute constituted negligence. The court of appeals, in language that might be subject to conflicting interpretations, said that "a violation of the statute was used as evidence that Largo was negligent." *Crespin v. Largo Corp.,* 698 P.2d at 830.

In some jurisdictions, a violation of a safety statute is only prima facie evidence of negligence. *See, e.g., Zeni v. Anderson,* 397 Mich. 117, 243 N.W.2d 270 (1976); W. Prosser, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* 230–31 (5th ed. 1984). However, Colorado, like the majority of states, holds that violation of a safety statute is conclusive evidence of negligence. *See Reed v. Barlow,* 153 Colo. 451, 386 P.2d 979 (1963); CJI–Civ.2d 9:14. *See also* W. Prosser, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law or Torts* 229–30 (5th ed. 1984); Restatement (Second) of Torts § 286 (1965). Accordingly, a violation of section 12–47–128(1)(a) conclusively establishes the defendant's negligence, and the instruction submitted to the jury was proper.

The judgment is affirmed.

DUBOFSKY, J., does not participate.